SPRINGFIELD SAFE DEPOSIT & TRUST CO. v. HASSETT, Acting Collector of Internal Revenue.

No. 740.

District Court, D. Massachusetts.

Feb. 11, 1942.

Charles E. Benson, Jr., of Springfield, Mass., for plaintiff.

Leon F. Cooper, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to the Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., on the brief), for defendant.

WYZANSKI, District Judge.

The only question in this case is whether the value of a bequest to a charity was sufficiently certain to be deducted from the testatrix' gross estate in order to ascertain the estate tax.

Section 303(a) (3) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 72, as amended, now compiled in 26 U.S.C.A. Int.Rev.Code, § 812(d) authorizes the deduction from a decedent's gross estate of bequests for the use of any corporation organized and operated exclusively for charitable purposes. But the uniform current of regulations and decisions adds the requirement that to be deductible, the bequest must have a determinable value.

In the case at bar the testatrix left $15,000 to a trustee to pay the income to Emily Kenney for life and upon her death to pay one half of the principal to the Springfield Hospital, a charitable corporation, and the other half to individuals. However, she provided that "if at any time said net income, *together with other funds* available to said Emily Kenney, shall in the opinion of said Trustee be insufficient for her *suitable support, maintenance* and *medical attendance*, said Trustee may, in its *uncontrolled discretion* * * * pay * * * out of principal * * * such * * * sums as it may deem proper *for the purposes aforesaid* * * * and with respect to all such payments the decision of said Trustee shall be final."

In 1936 Mrs. Kenney could anticipate that this trust would yield a net annual income of $400. She had, in addition to this income, the expectation of a pension of $40 monthly paid by the United States to her as a widow of a Civil War veteran; individual savings accounts of $7,374.32; joint savings accounts with her sister of $11,332.90; and an undivided half interest in an unencumbered house and lot worth $5,500 in which her sister had the other half.

She lived with her sister in the house just referred to; and in that situation the out-of-pocket expenses of the two sisters together were at a rate somewhat over $800 a year. If the house were disposed of, and Mrs. Kenney lived alone, her

probable expenses in some years, particularly if she were sick, would exceed the anticipated income of the trust together with the pension.

The plaintiff's counsel argues that the charitable bequest is certain and deductible under·the rule enunciated in Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. There the testator left a residue of $347,244.51 to his wife for life with authority to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys", and then left the remainder to a charity. The trial court found that the testator and his wife had always lived in a simple and unpretentious style and well within their income from investments, and that "after the payment of debts and the specific legacies, the estate produced an income in excess of the sum necessary, in the absence of unusual circumstances, to maintain her suitably in as much comfort as she enjoyed at any time during the lifetime of the * * * testator." (R. 21, fdg. XIII). On the basis of its findings, the trial court concluded that that charitable gift was indefinite and non-deductible. But, when the case was appealed, the Solicitor General agreed with the taxpayer that the gift to the charity was sufficiently definite to warrant a tax deduction. He said that "only shrinkage in value of the investments and diminution of earned income from such causes would have made it necessary to use any portion of the principal." (Gov. Br. pp. 12-13). The Supreme Court accepted this virtual confession of error; disregarded the possibility of unusual expenses such as medical care, future changes in cost of living and rates of investment and like uncertainties which the testator had evidently thought were real enough (since otherwise he would not have made specific provision allowing his wife to use the principal of the trust, if necessary); and held that the charitable gift was sufficiently certain to be deducted. Mr. Justice Holmes said at page 154 of 279 U.S., at page 291 of 49 S.Ct., 73 L.Ed. 647.

"* * * The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

The plaintiff overlooks a critical difference between the Ithaca case and this case. In the Ithaca case the normal income from the trust alone was enough to support the life tenant in the style which had become her standard. Here the normal income from the trust alone would not be sufficient to support the life tenant in her accustomed style. Even if to the income of the trust is added the income from the government pension, on the theory that the latter was certain and unassignable, see 38 U.S.C.A. § 129, nonetheless the combination would not make it reasonably clear that a woman of advancing age would never need the principal of the trust to give her suitable support, maintenance and, above all, medical attendance. Only if the life tenant remained in good health or continued to live with her sister and to retain her house and savings accounts would she be reasonably certain to maintain her standard of living and her medical care on the income of the trust and the pension. But she might become seriously ill. Moreover, she was under no obligation whatsoever to continue living with her sister or to keep her unrestricted assets. Legally she was free to abandon her sister; or to donate to some charity or relative or friend her house, accounts and other unrestricted assets; or in a single year of profligacy to waste all she had previously acquired. Such extreme courses of action were not probable; but it would not be unprecedented or unlikely for a person who received a legacy such as this to give to relatives or a favored charity substantially all her other assets. This she could do knowing that they would be the gainers and that, unless the trustee were so unsympathetic that he refused to dip into principal, the only loser would be, not herself, but the remainderman.

█ It follows from this analysis that, unlike the Ithaca case, here the gift of the remainder was uncertain. It depended on the unpredictable whim of the life tenant aided, to be sure, by the unpredictable discretion of a trustee. It is therefore not deductible from gross estate. Cf. Gammons v. Hassett, 1 Cir., 121 F.2d 229.

█ This conclusion is in no way affected by the fact that, as yet, Mrs. Kenney

 

has not disposed of her unrestricted assets and has had ample income for her needs. The question whether the gift to charity was certain must be determined in the light of facts known at the testator's death, not on facts subsequently revealed. Cf. Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 155, 49 S.Ct. 291, 73 L.Ed. 647.

Similar considerations require a similar disposition of the question of the deductibility of the testator's bequest of a remainder to the Springfield Hospital after the life estate of Mary Ladd.

Judgment for the defendant.