21 N.J. Super. 331 (1952)
91 A.2d 176
RUTH E. RENNER, IN BEHALF OF HERSELF AND THOSE REMAINDER LEGATEES UNDER THE LAST WILL AND TESTAMENT OF ROBERT T. SKELTON, DECEASED, WHO MAY JOIN WITH HER, PLAINTIFF,
v.
FRANCIS A. CASTELLANO, JR., EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF ROBERT T. SKELTON, DECEASED, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 29, 1952.
*332 Mr. Harry A. Gerrish, for the plaintiff and other remaindermen.
Mr. John J. Joel, for the Commonwealth Trust Company and certain remaindermen (Messrs. Burke, Sheridan & Hourigan, attorneys).
Mr. Emil H. Block, for Elsie K. Skelton.
*333 Mr. Royal F. Shepard, for Henry C. Hasbrouck, guardian of Lucy A. Skelton.
Mr. Francis A. Castellano, Jr., pro se.
STANTON, J.S.C.
There remain for determination two issues: (1) whether the testator made an absolute gift of maintenance and care to his widow, and (2) whether she made a valid transfer to him about one year prior to his death, of $15,000 from a savings account in her name in the Commonwealth Trust Company.
The testator, Robert T. Skelton, died on June 13, 1950, leaving a last will and testament dated June 23, 1949, which was duly probated. He was a dentist who had practiced his profession until a few years before his death, when he retired in order to take care of his wife who was seriously ill. Their marriage was childless. The widow, Lucy A. Skelton, now 70 years of age, mentally and physically ill, is bedridden, completely helpless, and in need of constant nursing care. The cost of her maintenance and care is about $12,000 annually. On October 25, 1950, by a judgment of this court, she was adjudged a mental incompetent, and her cousin Henry C. Hasbrouck was appointed her guardian. The nearest kin of the widow are cousins with whom she had little if any contact during almost 40 years of her married life. She is possessed of a separate estate in excess of $100,000, which was created by the testator and consists of the following: realty which had been held by them as tenants by the entirety, real estate mortgages held jointly by them, United States Government bonds registered in their joint names, and proceeds of insurance policies on his life. The testator's residuary estate likewise is in excess of $100,000.
It will simplify the discussion of the will if the first three paragraphs are set forth in full.
"FIRST: After my lawful debts are discharged, I give, devise and bequeath my estate of whatsoever kind and nature and wheresoever situate, including all United States of America Bonds, which are *334 not in the joint names of myself and my wife, and which I possess at the time of my death, to my dear wife, LUCY AUGUSTA SKELTON, to have and enjoy without limitation during her lifetime, insofar as it be necessary for her maintenance and care, for and during her natural life, with the sole condition and proviso however, that the remainder of said estate, if any, at the time of her death, is hereby given, devised and bequeathed to the persons hereinafter named.
SECOND: In the event of my death, having in mind the present physical and mental condition of my wife, and should her condition remain as at present or become worse due to arterial sclerosis from which she has been afflicted for the past ten years and more, and which appears incurable with degenerative changes showing progressive damage to her system, I therefore hereby appoint my good friend and advisor, Francis A. Castellano, Jr., executor and trustee of my estate, which estate is to be first applied towards the care, maintenance, shelter, medical attention and necessities of my said wife and then applied, upon her death, if there be any remainder, in the manner hereinafter set forth.
THIRD: I hereby instruct my executor and trustee, before mentioned, that my said wife is to be taken care of by private care and is to receive the best care for her comfort and is not to be placed in any institution of any kind; however, care should be exercised in the expenses for my said wife as she can linger on and live for a long time. She is to be cared for in her own home at 4-Crane Street, Kingston, New York; also, she is to be buried from said home and interred in Montrepose Cemetery at Kingston, New York; her funeral to be simple and in keeping with her way of life."
In the sixth paragraph, he provided that on the death of his wife "the rest and remainder of my estate, if any," should pass to his brothers, sisters, and other relatives and friends.
In the eighth paragraph he made a bequest of $1,000 to the University of Maryland to "be paid to such legatee before the residue and remainder of my estate, left unconsumed at the time of the death of my beloved wife" is distributed in accordance with paragraph sixth.
The guardian contends that the widow has an absolute gift of maintenance and care, while some of the remaindermen insist that, in the absence of need, she is entitled only to the income of the residuary estate for life, and others of them that she should receive no part of the corpus or income until her separate estate has been completely exhausted.
If the clause "insofar as it be necessary for her maintenance and care" were eliminated from the first paragraph *335 of the will, there would be no doubt but that the entire estate of the testator was dedicated to the maintenance and care of the widow during her lifetime. Does this clause mean that the payment of income and corpus, or either, is conditional on the financial need of the widow? Does it merely define the scope and range of the gift? Does it merely have reference to the cost of what the testator in the second paragraph of the will described as "the care, maintenance, shelter, medical attention and necessities of my said wife"? Does it refer to the accomplishment of the purpose of the testator, namely the comfortable support, maintenance and care of his widow, and not to the matter of her independent means?
It is to be noted that the testator makes no distinction between corpus and income in the provisions for the widow. Cases are numerous where a testator created a trust, providing that the beneficiary should receive the income, and in the event of its insufficiency for his comfortable support, so much of the corpus as may be necessary for that purpose. It is generally held that such a disposition constitutes an absolute gift of support and that the beneficiary's independent means and earning capacity are not to be considered in the determination of the amount of money requisite for such support. Pearce v. Marcellus, 137 N.J. Eq. 599 (E. & A. 1945); Hicks v. Jones, 138 N.J. Eq. 280 (Ch. 1946); Orange First National Bank v. Preiss, 2 N.J. Super. 486 (Ch. Div. 1949); Rezzemini v. Brooks, 236 N.Y. 184, 140 N.E. 237 (Ct. App. 1923); Hoops v. Stephan, 131 Conn. 138, 38 A.2d 588 (Sup. Ct. 1944).
There is a line of cases where the beneficiary is given the income from a trust fund and a right of access to the corpus, if it be required for his support. In these it is generally held that the corpus may be invaded only upon proof by the beneficiary that the income from the trust, supplemented by his independent income and earnings, is insufficient to provide for his support. In re Willey, 139 N.J. Eq. 118 (Prerog. 1946); In re Martin's Will, 269 N.Y. 305, 199 N.E. 491 (Ct. App. 1936); Hull v. Halloway, 58 Conn. 210, *336 20 A. 445 (Sup. Ct. 1889); Stempel v. Middletown Trust Co., 127 Conn. 206, 15 A.2d 305 (Sup. Ct. 1940).
Holden v. Strong, 116 N.Y. 471, 22 N.E. 960 (Ct. App. 1881), is a case frequently cited. There a father established a testamentary trust for his son with power in the trustee to use so much of the trust fund, either income or corpus, as should, in his judgment and discretion, be necessary for the proper care, comfort and maintenance of the son. It was held to be the duty of the trustee to so provide for the son although the latter might be able to support himself by his own exertions. Justice Hubbs, in discussing this seemingly liberal construction, said in his opinion In re Martin's Will, supra 
"An analysis of the language there used would seem to indicate a clear intent on the part of the testator to give of principal and income an amount which in the judgment and discretion of the trustee would fully provide for the proper care, comfort, and maintenance of the beneficiary. The gift of principal is as broad as the gift of interest. It is clearly not a gift of income with a condition attached as to the invasion of principal. Moreover, the beneficiary, a son, was shown to be a person below normal, mentally and physically, who had been insane and for whom the testator might be expected to have great solicitude."
An interesting discussion of a beneficiary's other means as entering into the necessity of payments for his support will be found in 2 A.L.R.2d 1431.
In a controversy such as this it is the duty of the court to ascertain the intention of the testator as expressed in the will, considered in the light of the circumstances, the situation and surroundings of the testator at the time of the execution of the will. The will should be considered in its entirety, meaning should be given to all its provisions, and if there is doubt or confusion, the dominant intent of the testator should prevail. Hammel v. Barrett, 79 N.J. Eq. 96 (Ch. 1910), affirmed 79 N.J. Eq. 217, 218 (E. & A. 1911); Clapp, Wills and Administration, sec. 51 and cases there cited.
*337 The widow was a very sick woman at the time the will was executed and for several years prior thereto. The testator evidenced the utmost devotion to her during the last few years of his life; he retired from the practice of his profession so that she might have his entire personal attention; his life seemed to be dedicated to her care; in the second paragraph he described her mental and physical condition and expressed concern about the degenerative changes that had taken place and which indicated progressive damage to her system. Since his death her condition has gradually worsened and her present state is as stated above. In the third paragraph he indicated that after his death his wife would be unable to plan for her own care, and he instructed his executor and trustee that she should have the best of private care in her own home and should not be placed in an institution, and uttered a cautionary word about the expense of her care because she might linger for a long time; he gave directions for her funeral and burial.
Those were the instructions of the testator for the care of his wife. How was the executor and trustee to provide that care? It is true that he knew she had and would have a substantial separate estate, but he had no control over that. He did not expressly state in the will that his benefaction for his widow would be available only after all or some part of her personal means were expended for her care. Can it be said that there is any implication in it to that effect? In the first paragraph, he gave his entire estate to her "to have and enjoy without limitation during her lifetime, insofar as it be necessary for her maintenance and care, with the sole condition and proviso" that the remainder, if any, would pass as provided in the sixth and eighth paragraphs. In the second paragraph, he directed that his estate was to be "first applied towards the care, maintenance, shelter, medical attention and necessities of my said wife," and if there were any remainder on her death it was to be applied as stated above. In disposing of what remained upon her death, in the sixth *338 paragraph he used this language: "the rest and remainder of my estate, if any," and in the eighth paragraph, he referred to it as that which was "left unconsumed."
Nothing could be clearer than that the dominant intention of the testator was to have the best of care provided for his wife, whom he felt would be helpless upon his death. It is certainly plain that he was dedicating his entire estate to her care, that he was concerned that moneys might always be available to provide for it, that the provisions for the other beneficiaries were entirely subordinate and that it might eventuate that nothing would be available for distribution to them.
The word "necessary" as used here in the first paragraph, considered with the context, and in the light of the surrounding circumstances, refers to what is required to accomplish testator's intention, namely, the comfortable maintenance and care of his widow, the scope, the range, and the cost of it. Without doing violence to every other expression in the will, it could not be said that the benefaction was conditional upon the widow's financial inability to support and maintain herself. Cf. Camden Safe Deposit & Trust Co. v. Read, 124 N.J. Eq. 599 (Ch. 1939), in which it was held that the word "necessary" did not refer to the beneficiary's inability to meet the expense of certain stated contingencies.
It is to be noted that there is no discretion reposed in the executor and trustee; that as a matter of fact from the time of the testator's death he has paid in full the cost of the care and maintenance of the widow; and that his intermediate account in the Probate Division of the Hudson County Court has been allowed.
It is my conclusion that the will discloses the intention to make an absolute gift of maintenance and care to the widow; that such provision is comparable to a gift of money, the amount of which is to be made up of the elements which constitute "care, maintenance, shelter, medical attention and necessities"; and that the availability to the widow of private means for her support has no more significance than the *339 possession of wealth by one who is given a specific monetary bequest.
The remaindermen stress the case of Hammel v. Barrett, supra, but it does not support their contentions. There a devise to a brother was charged with an obligation to his sister. The court found that it was not a primary obligation of the brother to provide her with a home and support, but one which was conditioned on her inability to do so from her own resources or exertions. It concluded that the prescribed condition existed and that if the parties did not agree upon an allowance for her support that proofs should be taken to determine the amount and character of the security to be given by the brother. It was held that the testator intended only to insure the beneficiary against falling into the need of a home and support.
It is urged that under this conclusion it is possible that the testator's estate may be entirely consumed in the care of the widow while her separate estate remained intact; and assuming her continued mental incompetency, that her estate, which had been created by him, would pass to her remote relatives, who were virtual strangers to her and him, while nothing would be available for his close relatives and his friends of long standing; this eventuality, the remaindermen argue, was not intended by the testator. This argument is based entirely on conjecture which may not be indulged in for the purpose of finding an alleged intention and then rewriting the will to express it. A will may not be construed to give effect to any such presumed intention, however plausible or probable it may be. The intention must be found in the words of the will, construed in accordance with the recognized rules of construction, and in the light of the surrounding circumstances in evidence. 2 Page on Wills, sec. 919; Fass v. Blatz, 141 N.J. Eq. 32 (Ch. 1947); Leyendecker v. Leyendecker, 142 N.J. Eq. 449 (E. & A. 1948); Guaranty Trust Co. of N.Y. v. First National Iron Bank, 8 N.J. 112 (1951). This dreaded eventuality might have been avoided by the testator, if he so desired, by appropriately providing *340 that his benefaction for his widow was conditional upon her financial need. Such an intention cannot be found in the words of the will construed as aforesaid.
In June 1949 the widow had on deposit in savings account numbered 469 in the Commonwealth Trust Company, the sum of $19,140.50. The testator went to the bank and asked Alfred J. Curtin, an officer thereof, who, incidentally, is one of the remaindermen, to transfer $4,140.50 of it to his account numbered 333 in the same bank and to purchase for him United States Government bonds in the face amount of $15,000 with the balance. He declined to do this in the absence of appropriate drafts drawn on the bank by her. When Dr. Skelton stated that she was unable to write her signature, he informed him that it would be sufficient if she made a cross mark upon the drafts in the presence of two witnesses, one of whom should be an officer of a bank in Kingston, N.Y., the place where she was then residing. Shortly thereafter, two drafts which had been prepared by Mr. Curtin came to the bank through the mail. Each bore the mark of Mrs. Skelton and the signatures of the two required witnesses, whose depositions were presented herein. One, dated June 17, 1949, for $4,140.50, was made payable to "Robert T. Skelton  savings no. 333." On the strength of this, that sum of money was immediately transferred from Mrs. Skelton's account to that of her husband. In his brief the guardian withdrew his prior contention with respect to this and conceded that it constituted a valid transfer of that sum of money from the wife to the husband. The other was dated the same date and was payable to Commonwealth Trust Company in the sum of $15,000. Government securities were purchased with this sum, but they were retained by the bank and either they, or bonds given in substitution therefor, are still held by it. Dr. Skelton never visited the bank between the date that he unsuccessfully sought to have the moneys withdrawn from his wife's account without her signature, and the date of his death. No instructions came to the bank from Mrs. Skelton at any time with respect to the disposition *341 of the sum of $15,000 or of the bonds purchased therewith. While Mr. Curtin insisted that he would have delivered the bonds in question to Dr. Skelton if he had come in for them, the fact is that they were never delivered to anyone, and that upon his death the bank refused to deliver them to his executor because it had doubt as to the respective rights of the widow and the executor thereto.
In this state of the proofs, the only conclusion that can be drawn is that by making the draft of $15,000 in favor of the Commonwealth Trust Company, Mrs. Skelton merely transferred that sum from her savings account to make it available to the bank for the purchase of the government securities. There is no proof of any act or authorization or direction at the time she signed the draft from which it could be said that there was a gift, of the sum of $15,000 or the bonds purchased therewith, to her husband. It has been argued that this money was in fact the property of Dr. Skelton and was in his wife's account merely for convenience. While it is conceded that all moneys of which Mrs. Skelton was possessed came from her husband, there is no proof whatever that the moneys in the account in question were in fact Dr. Skelton's and that they were deposited in his wife's account only as a matter of convenience. The bank will be ordered to turn over the bonds or the value thereof, with all accumulation of interest thereon, to the guardian.
The other issues raised in the pretrial order have been disposed of by the concessions of counsel in their briefs.