24 N.J. Super. 243 (1952)
93 A.2d 796
HENRY T. STETSON, AS EXECUTOR OF AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT AND CODICIL THERETO OF MARIE A. MUNN, DECEASED, PLAINTIFF,
v.
COMMUNITY CHEST OF THE ORANGES AND MAPLEWOOD, A NEW JERSEY CORPORATION, THE HOSPITAL CENTER AT ORANGE, A NEW JERSEY CORPORATION, GENEVIEVE B. WHITTEMORE, AND THEODORE D. PARSONS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 26, 1952.
*244 Messrs. Riker, Emery & Danzig (Mr. Charles Danzig appearing), attorneys for the plaintiff.
Messrs. Howe & Davis (Mr. William Howe Davis appearing), attorneys for the defendant Community Chest of the Oranges and Maplewood.
Messrs. Pitney, Hardin & Ward (Mr. Waldron M. Ward appearing), attorneys for the defendant, counterclaimant and cross-claimant, The Hospital Center at Orange.
*245 Messrs. Stryker, Tams & Horner (Mr. Emory C. Risley appearing), attorneys for the defendant Genevieve B. Whittemore.
SPEAKMAN, J.C.C. (temporarily assigned).
The plaintiff, executor and trustee of the estate of Marie A. Munn who died November 21, 1949, seeks a construction of her will and instructions concerning his duties thereunder to use the corpus of the estate for the benefit of the defendant Genevieve B. Whittemore, and instructions whether he should pay or litigate a federal estate tax deficiency assessment. Alternatively, he seeks the same relief under the Declaratory Judgments Act.
Defendant, The Community Chest of the Oranges and Maplewood, one of the remaindermen, joins the plaintiff in his requests. Defendant, The Hospital Center at Orange, the other remainderman, asserts that it is not proper or permissible for the plaintiff to use any of the corpus for the benefit of said Genevieve B. Whittemore. Defendant Genevieve B. Whittemore, the life tenant, asserts that she is entitled to have all of her expenses paid out of the trust income and principal without reference to her personal resources.
The evidence adduced at the trial establishes that at the time of her death the testatrix was a widow and her nearest relative was her sister, Genevieve B. Whittemore, then 74 years of age. The decedent and her sister were quite intimate, visiting back and forth frequently. During these visits the sisters, in the presence of Mrs. Whittemore's attorney, discussed their infirmities and the provisions each was making for the other in their respective wills.
The depositions of Mrs. Whittemore's physician, Dr. William H. Upson, and of her lawyer, Mr. Hugh Meade Alcorn, Jr., are to the effect that in 1947 Mrs. Whittemore's illness had progressed to the point where she required the attendance of a full-time nurse. She had obtained one in Catherine *246 Derrick who, under a codicil made by Mrs. Munn on May 2, 1949, receives a legacy of $1,000 provided she is still in the employ of Mrs. Whittemore at the time of Mrs. Whittemore's death. Prior to the employment of this full-time nurse, Mrs. Whittemore was able to manage with a housekeeper, a gardener, and a cleaning woman. In addition to these expenses Mrs. Whittemore in 1947 required extensive medical care and the use of drugs and medicines. Mrs. Whittemore had an estate then of approximately $275,000 from which she derived an annual income of $13,000. Her nursing and medical expenses were then and are now approximately $9,000 per year. With the advent of a full-time nurse in 1947 Mrs. Whittemore's income became insufficient to pay for all of her expenses, and to defray the cost thereof Mrs. Whittemore resorted to her own capital funds to meet the deficiency of income. The record is barren of any proof that Mrs. Munn in her lifetime gave financial assistance to her sister during the period when her sister's income was insufficient to pay all her expenses.
When Mrs. Munn died her sister was an invalid, practically bed-ridden. Her condition then was a natural progression of the infirmities that had beset her many years earlier, and her physician's estimate of her life expectancy was then about two years. As of September 9, 1952, the date the doctor's deposition was taken, her life expectancy was two to three years.
All of the evidence indicates that Mrs. Whittemore's way of living since her sister's death is the same as her way of life for several years prior to Mrs. Munn's death. She still has a full-time nurse, a housekeeper, a gardener and the cleaning woman. In the winter she goes to the Hueblin Hotel in Hartford, Connecticut, 20 miles distant from her home in Suffield, where she rents an apartment and remains in it with her full-time nurse and with her regular doctor in attendance upon her needs.
The income from the estate is approximately $11,000 a year. Mrs. Whittemore's income from her private estate, *247 augmented by the trust income, is sufficient to maintain her adequately.
Mr. Alcorn's testimony reveals that Mrs. Whittemore's own estate at the time of her sister's death consisted of high-grade, marketable securities having a market value of approximately $275,000. In addition to these securities, she owns the farm at Suffield, Connecticut, which can be fairly described as a country estate. The income just about meets the expenses to run it. It has been assessed for real estate taxes at a value of $16,110, but is apparently worth somewhere between $40,000 and $48,000. Her illness has been of long standing, known to her and Mrs. Munn who also suffered from heart disease.
In article FIFTH of her will the testatrix gave the residue of her estate, after the usual expenses and certain bequests, to her executor and trustee in trust for the following uses and purposes:
"* * * To collect and receive the income therefrom and after paying any and all expenses in connection with the administration of this trust, to pay or apply the net income and so much of the principal as may be proper to, or for the account of my sister, GENEVIEVE B. WHITTEMORE, during her life. My sister is not at all well, and I want all of the income and so much of the principal of my estate (and if necessary all of it) as may be proper to be applied to her maintenance, care and happiness, so that she may have every comfort possible. I vest in my Executor and Trustee full discretion as to the use of any of the principal for the benefit of my sister as set forth herein.
(b) On the decease of my sister, I direct that the trust shall cease and terminate, and I dispose of the principal or whatever remains thereof, as set forth in Articles Sixth, Seventh and Eighth hereof."
In article SIXTH of the will, as amended by the codicil, legacies aggregating $26,000 were given to several individuals. In article SEVENTH legacies aggregating $4,000 were given to four charitable organizations. In Article EIGHTH the amount remaining at the death of the life tenant, after making bequests set forth in articles SIXTH and SEVENTH, was given in equal shares to the defendant, Community Chest of the Oranges and Maplewood, and to *248 Orange Memorial Hospital, for purposes therein stated. The defendant, The Hospital Center at Orange, is the successor to Orange Memorial Hospital.
From the date of incorporation of the Welfare Federation of the Oranges (now Community Chest of the Oranges and Maplewood), Wilbur Munn, the husband of the decedent, was most active in its affairs, a substantial contributor each year, and after his death testatrix, in 1943, established with the Community Chest the "Wilbur Munn Memorial," to which she contributed in various years up to the time of her death a total sum of $20,000. Mr. Munn was also closely identified with the Orange Memorial Hospital during his lifetime; Mrs. Munn had herself been a patient there and was greatly interested in the work of that institution's Adult Heart Clinic and Children's Heart Clinic.
The first question presented is, what are the limitations and standards which plaintiff must observe in the application of the corpus of the trust for the benefit of Genevieve B. Whittemore? Clearly Mrs. Whittemore has an unqualified right to all of the net income. She is also entitled to so much of the corpus "as may be proper to be applied to her maintenance, care and happiness, so that she may have every comfort possible." The testatrix did not confine the bequest to an amount measured by the actual necessities of her sister's support and maintenance. Nor, on the other hand, did she intend to subordinate the trust corpus and her residuary bequests to the unrestrained overtures of the life tenant. The testatrix intended that her sister, the life tenant of the trust, should currently receive during her life from the estate sums sufficient to enable her to have the same or comparable "maintenance, care and happiness," to which she was accustomed before the testatrix' death. Vide, Hicks v. Jones, 138 N.J. Eq. 280 (Ch. 1946). The medical, nursing and householding services that prevailed in the past are to continue in the future, with such additions and such services as future events make necessary and proper. Upon the trustee devolves the duty to determine the amounts *249 necessary to fulfill and accomplish the object of the testatrix. Hicks v. Jones, supra.
Next, the question of the extent of the rights and interests of Mrs. Whittemore in the corpus of the trust is necessarily involved with the question whether the independent means of a beneficiary must be exhausted or even considered by the trustee in exercising his discretion with respect to the appropriation of principal of a trust for the support and maintenance of the beneficiary. The latter has been the subject of much litigation and comment.
In the recent case of Renner v. Castellano, 21 N.J. Super. 331 (Ch. Div. 1952), the court reviewed the New Jersey decisions at page 335:
"Cases are numerous where a testator created a trust, providing that the beneficiary should receive the income, and in the event of its insufficiency for his comfortable support, so much of the corpus as may be necessary for that purpose. It is generally held that such a disposition constitutes an absolute gift of support and that the beneficiary's independent means and earning capacity are not to be considered in the determination of the amount of money requisite for such support. Pearce v. Marcellus, 137 N.J. Eq. 599 (E. & A. 1945); Hicks v. Jones, 138 N.J. Eq. 280 (Ch. 1946); Orange First National Bank v. Preiss, 2 N.J. Super. 486 (Ch. Div. 1949); Rezzemini v. Brooks, 236 N.Y. 184, 140 N.E. 237 (Ct. App. 1923); Hoops v. Stephan, 131 Conn. 138, 38 A.2d 588 (Sup. Ct. 1944).
There is a line of cases where the beneficiary is given the income from a trust fund and a right of access to the corpus, if it be required for his support. In these it is generally held that the corpus may be invaded only upon proof by the beneficiary that the income from the trust, supplemented by his independent income and earnings, is insufficient to provide for his support. In re Willey, 139 N.J. Eq. 118 (Prerog. 1946); In re Martin's Will, 269 N.Y. 305, 199 N.E. 491 (Ct. App. 1936); Hull v. Holloway, 58 Conn. 210, 20 A. 445 (Sup. Ct. 1889); Stempel v. Middletown Trust Co., 127 Conn. 206, 15 A.2d 305 (Sup. Ct. 1940)."
1 Scott on Trusts, sec. 128.4, page 672, presents the following discussion:
"It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. Where the trustee is directed to pay to the beneficiary or *250 to apply for him so much as is necessary for his maintenance or support, the inference is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources. The settlor may, however, manifest an intention that the trust property should not be applied to his support unless and only to the extent that he is in actual need, in which case he is not entitled to support out of the trust fund if he has other and sufficient resources."
See also, 4 Bogert, Trusts and Trustees, section 812; Restatement of the Law of Trusts, section 128, comment E; 5 New Jersey Practice, Clapp, section 141. A complete annotation and analysis of the cases is found in 2 A.L.R.2d 1400, at p. 1431 et seq.
Up to the present time the trustee has been giving the life tenant the net income of approximately $11,000 per year. Combined with Mrs. Whittemore's own resources of about $13,000 there is a yearly surplus of about $2,000 over the life tenant's expenses. This action of the trustee expresses a policy of not invading corpus of the trust if the income of the trust and private income of Mrs. Whittemore are sufficient to satisfy the requirement of the testatrix as to Mrs. Whittemore's maintenance and care. Under Mrs. Munn's will, this policy is completely proper. It may be that in some future period, either because of increased expenses or lessened income, this combination will not be sufficient to satisfy that requirement. In that event the trustee may invade the corpus of the trust, without requiring Mrs. Whittemore to first use her own principal, in order to make up the amount necessary to meet the expenses of Mrs. Whittemore. Such action would seem to be fully consonant with the generous attitude of the testatrix.
The contention of the Hospital Center at Orange that Mrs. Whittemore must completely exhaust her own independent estate before plaintiff may properly use the principal of the trust estate for her benefit is without merit. The concern of the testatrix for her sister's peace of mind as well as for her physical welfare was such as to make it inconceivable that she intended that her sister be required to use *251 any part of her principal  let alone exhaust it  before resorting to the trust corpus.
Finally, the question whether the federal estate tax deficiency assessment should be litigated is one which should be determined by the executor as a part of his duty in administering and settling the estate. In requesting instructions on this point the plaintiff relies on section (b) of N.J.S. 2A:16-55, the Declaratory Judgments Act, for the proposition that the trustee may have a declaration to:
"b. Direct the executor * * * to do or abstain from doing any particular act in his fiduciary capacity; * * *."
If the statute were as broad as the plaintiff contends it is, a fiduciary would be entitled to seek the court's advice before it began any litigation, paid any bill, or performed any other act. Such is not the purpose of the act. The remedy provided by the statute is circumscribed by the qualification that there must be an actual controversy. N.J. Turnpike Authority v. Parsons, 3 N.J. 235 (1949), at page 240. It does not appear that the parties here are in dispute as to the advisability of litigating the estate tax deficiency assessment. Even if there were such a dispute it would not form the basis for a declaratory judgment, for a controversy between a trustee and a beneficiary of a trust as to the wisdom of suggested action by the trustee, where there is room for choice, forms no basis for a declaratory judgment. Petition of Capital Bank and Trust Co., 336 Pa. 108, 6 A 2d 790 (Sup. Ct. 1939).
A judgment may be entered in accordance with the provisions of this opinion.