90 N.J. Super. 350 (1966)
217 A.2d 627
IN THE MATTER OF THE ESTATE OF FRANK G. THOMPSON, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1966.
Decided March 4, 1966.
*351 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Max Mehler argued the cause for appellant National Newark & Essex Bank (Mr. Samuel R. Kirschner, attorney).
Mr. Philip J. Mylod argued the cause for respondent Helen Lapp Thompson (Messrs. Mylod and Feinberg, attorneys).
PER CURIAM.
Frank G. Thompson died domiciled in Essex County, New Jersey on June 13, 1960 and his will, dated April 28, 1960, provided in part as follows:
"Fifth: I give, devise and bequeath to my wife, Helen Lapp Thompson, if she survives me, an amount equal to fifty percent of my entire estate. The within gift to my wife shall be payable twenty percent one year after my decease, twenty percent two years after my decease, twenty percent three years after my decease, twenty percent four years after my decease, and twenty percent five years after my decease." (Italics ours)
Decedent's estate greatly increased in value between the date of his death and the date when the executor was to make *352 distribution. The Essex County Court, Probate Division, construed the above testamentary provision to mean that decedent's wife, who survived him, was entitled to "fifty percent of the value of the estate of said testator determined as of the date of distributions to her and not as of the date of the testator's death."
The executor appeals from the County Court judgment so construing the above provision. It maintains that the use of the word "amount" indicates an intent on the testator's part to create a general legacy, and not a specific one, thus requiring calculation of the quantum of the legacy by the designated formula as of the date of testator's death.
The will also bequeathed to the wife all of decedent's household furniture, furnishings, jewelry and automobiles. There were several legacies payable to other named beneficiaries, "without interest," at such time as the executor and trustee, in its discretion, might determine, "but within five years after my decease." The residuary estate was then given to the trustee "to pay the net income therefrom to my wife, Helen Lapp Thompson, during her life, in monthly installments, beginning on the first day of the month next following the date of my death." Upon the wife's death, the income was payable to decedent's mother-in-law during her lifetime. The trustee was given discretionary power to invade the corpus of the trust to maintain the standard of living of the wife and mother-in-law. Upon their deaths, the trustee was directed to use the balance for designated charitable purposes.
"A general legacy is defined as a bequest of personal property payable out of the general assets of the testator's estate rather than from specific property included therein. * * * A specific legacy is defined as a bequest of personal property in specie and not payable from other assets of the estate. * * * It may be all or part of the specified property or fund. * * * In the absence of provision to the contrary, specific legacies of property carry with them all accessions and accretions thereto after the testator's death." Busch v. Plews, 12 N.J. 352, 356 (1953).
*353 As stated in 4 Page on Wills, § 1599, pp. 552-3:
"A general legacy, other than a gift of testator's entire estate or a fraction or residue thereof does not carry income and profits before it is due * * *.

* * * * * * * *
A gift of all of testator's estate, or a fraction thereof, or the residue thereof, passes all income and increment not otherwise disposed of * * *."
In the instant case, if the testator had devised and bequeathed 50% of his entire estate to his wife, that would have been a specific devise and bequest, and she would have been entitled to all accretions thereto after the testator's death and until the time of distribution. But, as the trial court herein properly concluded, the bequest in paragraph Fifth was in the nature of a general legacy.
Notwithstanding this finding of a general legacy, the trial court observed:
"This court is not interested in labels as to whether the legacy was specific or general and seeks to ascertain the plan and purpose of the testator as gathered from the language of the entire Will and the attendant circumstances. In re Armour [Estate], 11 N.J. 257, 269 (1953)."
Of course, the testatorial intent is of great importance but, at the same time, "[i]t is elementary principle in the construction of wills that the controlling consideration is the effect of the words as actually written rather than the actual intention of the testator independently of the written words." In re Armour's Estate, supra, 11 N.J., at p. 271.
The trial court stated in its opinion:
"In the case at bar, the decedent saw fit to leave his wife a fraction of his estate rather than a specified dollar sum thereby distinguishing the cases cited by the executor." (Italics ours)
That was not entirely accurate. Testator did not leave his wife "a fraction of his estate." He gave her an "amount equal to fifty percent of my entire estate." "Entire estate" evidently *354 referred to its gross value, without regard to diminution thereof resulting from the other provisions of the will. The language employed by the expert scrivener of this will shows an awareness of its technical legal effect. The distinction between giving "one-half of my estate" and "an amount equal to one-half of my estate" is well recognized in estate planning.
"When a legacy is given to a surviving spouse based on a formula, such as `an amount equal to one-half of my adjusted gross estate,' such legacy is presumably intended to be a pecuniary legacy requiring the computation of the exact number of dollars. Since the adjusted gross estate will be based on the values in the federal estate tax return, any fluctuation in the values of the assets of the estate between the values determined for federal estate tax purposes and the values on the date of distribution should not affect the number of dollars to which the wife is entitled. If the assets increase in value, the residuary legatees will benefit; if they decrease, the residuary legatees will bear the shrinkage. If the testator does not want this result  and in an inflationary period he may wish his wife to benefit from increases in asset values  the gift to the surviving spouse can be a fractional share of the residuary estate." P L I monograph, "Drawing Wills," by Schwarzberg and Stocker (April 1963 ed.) p. 63.
In re McDonnell's Will, 45 Misc.2d 57, 256 N.Y.S.2d 149, 151 (Surr. Ct. 1965), expresses the rule as follows:
"The language employed in fixing the share of the widow refers to an `amount' which term, in the absence of other provisions indicating to the contrary, has been held to signify a fixed dollar amount or to create a pecuniary type legacy, which legacy does not share in subsequent appreciations (Matter of Gilmour's Estate, 18 A.D.2d 154, 238 N.Y.S.2d 624)."
Gilmour's Estate recognizes the narrow but well-established distinction between a pecuniary formula clause, usually indicated by words such as "an amount equal to," evidentiary of a testator's intent to give a fixed amount, and a residuary formula clause, giving a percentage or fraction of the estate. In the former, the widow is not entitled to share in the appreciation of security values to the date of distribution and does not suffer by reason of any shrinkage thereof. In the *355 latter, the widow would share in appreciation and depreciation of the value of the estate.
The provision in the will directing that "the within gift to my wife" shall be payable at the rate of 20% per year over a five-year period, beginning one year after testator's decease, further indicates an intent to give her a fixed amount, rather than fluctuating sums. The executor has paid the widow the installments due for the years 1961, 1962 and 1963 in cash, totalling $134,643.26. This money was paid out of the general funds of the estate. The executor has never earmarked or segregated the assets to meet the total bequest to the widow. The executor has also paid the widow all the income due her under the trust provision of the will, so that income is not an issue before us. She gets all of the income for life under the residuary trust.
We conclude that the trial court erred in interpreting the bequest in paragraph "Fifth," first noted above, to mean an amount equal to 50% of testator's entire estate as of the time of distribution. It is our opinion that a proper construction of this clause limits the general legacy provided for therein to 50% of testator's entire estate as valued at the time of death and without regard to the appreciation in value between the date of death and the date of distribution.
Reversed and remanded for entry of an order in conformity herewith.