**CITIZENS FIRST NATIONAL BANK OF RIDGEWOOD, Executor of the Estate of Charles L. Tricker, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 243–65.

United States District Court
D. New Jersey.

Sept. 9, 1968.

---

Weber, Muth & Weber, by Steven Warm, Ramsey, N. J., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., by Donald R. Anderson, John G. Milano, Herman Wilson, David A. Wilson, Jr., Attys., Dept. of Justice, and David M. Satz, Jr., U. S. Atty., by Jonathan Kohn and Barry D. Maurer, Asst. U. S. Attys., for defendant.

## OPINION

AUGELLI, Chief Judge:

Plaintiff, as executor of the estate of Charles L. Tricker, deceased, sues for a refund of a federal estate tax assessed against and collected from decedent's estate, and for such further refund as may result from the allowance of a deduction for additional counsel fees incurred in connection with the conduct and maintenance of this action. The jurisdiction of the Court is invoked under 28 U.S.C. A. § 1346(a) (1).

The decedent, Charles L. Tricker, a resident of New Jersey, died, testate, on April 19, 1961. Plaintiff is the duly qualified and acting executor and trustee of his estate. Decedent's wife, Mary Louise Tricker, survived him, but has since died.

By paragraph "Third" of his will, decedent devised and bequeathed the entire residue of his estate, in trust, with a direction to the trustees to pay to his wife all of the net income therefrom during the term of her natural life. Upon her death, and after the payment of certain specific legacies, provision was made for the remainder of the estate to go to certain charities.

In paragraph "Tenth" of his will, decedent authorized his trustees, "in their absolute and uncontrolled discretion to pay over to any beneficiary, or to apply for the benefit of any beneficiary, out of the corpus of any fund held for any such beneficiary, at any time or from time to time, such sum or sums of money as to such trustees may seem advisable or proper." The same paragraph also provided that in exercising the power to invade corpus, "the trustees shall take into consideration any other income or property which may be available to such beneficiary from other sources", and that the judgment of the trustees "as to the advisability or propriety of any such payment or payments shall be conclusive and binding upon all persons."

Although paragraph "Tenth" speaks in terms of "any beneficiary" for whom corpus of the trust could be invaded, the

sole beneficiary here involved is decedent's widow. Upon her death, as noted, the remainder of the corpus, after payment of certain legacies, was to go to charities. Thus the trust created by decedent was for both a private and charitable purpose.

In the federal estate tax return filed on March 12, 1962, plaintiff claimed a charitable deduction in the amount of $88,229.96, representing what plaintiff had actuarially determined to be the present value of the corpus of the trust bequeathed to charity. In support of its right to make this deduction from the gross value of the estate, plaintiff contends that decedent's will sets up an ascertainable standard for invasion of the trust corpus by the trustees; that such invasion is properly limited to enable the private beneficiary to maintain the same standard of living she enjoyed during her husband's lifetime; and that the investment provisions of paragraph "Twelfth" of the will do not make the amount of the charitable remainder unascertainable.[1]

The claimed charitable deduction was disallowed in toto. Defendant contends that decedent's will fails to provide an ascertainable standard for invasion of the trust corpus; that the authority given to the trustees, in their absolute and uncontrolled discretion, to pay over to any beneficiary any amount out of corpus, fails to provide any standard whatsoever which might restrict their invasion of corpus; and that the language of the will providing for invasion of corpus for the benefit of any beneficiary, does not provide an objective standard governing the extent of possible invasion.[2]

Disallowance of the claimed charitable deduction resulted in increasing the tax liability of the estate from $153.24 to $18,380.16. Pursuant to demand therefor, plaintiff paid $19,400.00 to cover the recomputed tax and filed a timely claim for a refund of the $19,400.00 or such greater sum as might be legally refundable. Refund was denied, and the action in this Court followed.

The Internal Revenue Code of 1954, insofar as is here pertinent, 26 U.S.C.A. § 2055(a) (2), provides that for the purposes of the tax imposed by section 2001 of the Code, the value of the taxable estate shall be determined by deducting from the value of the gross estate, the amount of all bequests, legacies, devises or transfers made to or for the use of qualified charitable corporations. And section 20.2055-2 of the applicable treasury regulations, 26 CFR § 20.-2055-2, provides that if a trust is created for both a charitable and a private purpose, a "deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest."

The law is clear that there can be no deduction for a charitable bequest unless the will itself states an ascertainable standard governing the power to invade corpus so that the extent of possible invasion may be reasonably and accurately measured as of the date of testator's death. Extrinsic evidence cannot supply an ascertainable standard if none appears on the face of the will. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Merchants Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.

1. The Court is of the opinion that paragraph "Twelfth", under the facts of this case, has no bearing on the issue involved.

2. In the context in which the term "for the benefit of any beneficiary" is used in paragraph "Tenth" of the will, it does not have the broad significance attributed to it by defendant. A reference to the punctuation used is clearly indicative that what decedent intended was to give his trustees the option of either making payments directly to a beneficiary or to some third person for the benefit of such beneficiary. In any event, as used in said paragraph "Tenth", the quoted language is not determinative of the issue as to whether or not the will contains an ascertainable standard for the invasion of corpus.

Ct. 108, 88 L.Ed. 35 (1943); Henslee v. Union Planters National Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Zentmayer's Estate v. C. I. R., 336 F.2d 488 (3 Cir. 1964); Seubert v. Shaughnessy, 233 F.2d 134 (2 Cir. 1956).

In Ithaca Trust, the testator bequeathed the residue of his estate to his wife for life, with power to invade corpus for any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." After the wife's death, there were bequests in trust for charities. The question posed for decision was whether the provision for maintenance of the wife made the charitable bequests so uncertain as to defeat the deductibility of the amount of those gifts from the gross estate in order to ascertain the estate tax. The Court answered this question in the negative, and held that if the will provides for invasion of corpus only to the extent necessary to maintain a beneficiary according to an accustomed manner of living, an ascertainable standard is established, and the value of the charitable bequest may be deducted for estate tax purposes.

In Merchants Bank and in Henslee, the claimed charitable deductions were disallowed because of the absence of an ascertainable standard governing the invasion of corpus. Of particular significance is the language used in Merchants Bank, where the Court stated that for a charitable deduction to be allowed, the law requires

"that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. (Citation omitted.) *Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable.* And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable." (Emphasis supplied.)

Whether or not the invasion of corpus permitted by the will in this case is, as contended by plaintiff, authorized only to the extent of enabling the beneficiary to maintain the same standard of living she enjoyed during her husband's lifetime, depends upon the construction that is placed on the language employed by decedent in paragraph "Tenth" of his will. In this connection the Court must determine, in light of local law, the interest conveyed to the beneficiary and the extent to which, conformably to the testamentary trust provisions, corpus may be invaded. Strite v. McGinnes, 330 F.2d 234 (3 Cir. 1964).

In New Jersey, the judicial function in construing a will is to ascertain and give effect to the probable intention of the testator. The primary inquiry must be directed to the language of the instrument itself, taken in context with surrounding facts and circumstances. The controlling consideration is the effect of words as actually written, rather than the actual intention of the testator independently of the written words. The court will not substitute its judgment for that of the testator where his intention can clearly be gathered from the four corners of the will. It is only when the court is left in doubt by the terms of the will and surrounding circumstances that resort will be had to rules of construction. And it is a rule of construction in New Jersey that provisions in a will for the benefit of a widow should be construed liberally in her behalf. In re William F. Conway, 50 N.J. 525, 236 A.2d 841 (1967); Morristown Trust Co. v. McCann, 19 N.J. 568, 118 A.2d 16 (1955); In re Thompson, 90 N.J.Super. 350, 217 A.2d 627 (App.Div.1966); In re Trust Co. of Morris County, 83 N.J.Super. 411,

200 A.2d 330 (App.Div.1964); Hudson Trust Co. v. Grant, 114 N.J.Eq. 130, 168 A. 283 (Ch.1932); Arenofsky v. Arenofsky, 29 N.J.Super. 209, 102 A.2d 101 (App.Div.1954); Sibson v. First National Bank & Trust Co. of Paulsboro, 61 N.J.Super. 88, 160 A.2d 76 (Ch. 1960). Viewed in light of these principles, and keeping in mind the rule that the will itself must state an ascertainable standard governing the invasion of corpus, it is obvious that decedent's will does not provide any such standard.

In paragraph "Tenth" of the will, decedent authorized his trustees, in their absolute and uncontrolled discretion, to pay over to any beneficiary, out of corpus, "such sum or sums of money as to such trustees may seem *advisable* or *proper*." (Emphasis supplied.) Plaintiff argues that "advisable" in and of itself is a "somewhat limiting term". Even so, it can only be a term of limitation when appended to some recognizable or stated purpose. The question is, "advisable" for what purpose? If it were tied in with a provision for support or maintenance, there might be some merit to plaintiff's argument. But there is no referent to the word "advisable", hence it cannot be said to be a term of limitation in the context in which it is used in paragraph "Tenth". Plaintiff points to Strite v. McGinnes, supra, for the proposition that "advisable" is a term of limitation. In that case, however, the word was referable to the "reasonable needs and proper expenses" of the beneficiary of the trust.

What has been said about "advisable", is likewise applicable to "proper". Plaintiff asserts this word is a "distinct limitation", and that it can only refer to conformity to a standard. Again, the unanswered question remains, what standard? In support of its contention in this regard, plaintiff cites Lincoln Rochester Trust Co. v. Commissioner of Internal Revenue, 181 F.2d 424 (2 Cir. 1950). But in that case the will authorized the trustee to advance to the income beneficiary such sums of principal as would be necessary for her "proper care, support and maintenance". It was held that this language set forth a sufficiently ascertainable standard to permit a valuation and deduction for estate tax purposes of the remainder interest devised to charity.

■■ In sum, plaintiff argues that the standard invoked by the words "advisable or proper" is simply support and maintenance according to the beneficiary's former standard of living. The difficulty with this argument is the complete absence of any language in the will that limits invasion of corpus to the objective standard of the beneficiary's former standard of living. The decedent used clear and unambiguous language in his will to express his intention that the trustees were authorized, in their absolute and uncontrolled discretion, to pay over to any beneficiary either directly or to some third person for the benefit of such beneficiary, out of corpus, such sum or sums of money as the trustees deemed advisable or proper. The power to invade corpus was not tied in with any specific purpose, such as the care, support or maintenance of the beneficiary. The direction contained in decedent's will, that in making payments out of corpus, the trustees were to take into consideration any other income or property available to such beneficiary from other sources, does not help plaintiff. This direction might limit the amount taken from corpus at any particular time, but it is not a limitation on the power to invade per se. It is this latter limitation only that is relevant, i. e. what the trustees had the power to do. Zentmayer's Estate v. C.I.R., supra. And it certainly may not be argued that the trust corpus could be invaded for such sums as the trustees deemed advisable or proper for the "benefit" of a beneficiary because this would invoke a subjective standard not capable of ascertainment. Merchants Bank v. Commissioner, supra; Henslee v. Union Planters Bank, supra. It is also to be noted that the words "advisable" and "proper" are stated in the disjunctive in decedent's will. This serves to enlarge

rather than restrict the conditions for the exercise of power to invade corpus. Strite v. McGinnes, supra.

At the time of decedent's death, his wife was 75 years of age and "her health was excellent". Her individual assets and property amounted to about $20,000.00, and she had an annual income of a little more than $2,000.00. During the latter years of their married life, decedent and his wife enjoyed a comfortable, but not an extravagant or luxurious standard of living. For the three years prior to his death, decedent and his wife filed joint income tax returns, reporting net taxable income of $14,240.12, $9,960.88, and $2,013.76, for the years 1959, 1960 and 1961, respectively. In the absence of an ascertainable standard in decedent's will, and the Court has found none in this case, all of the foregoing factors are irrelevant. Henslee v. Union Planters Bank, supra.

A number of New Jersey cases have been cited by plaintiff which it claims are indicative that the state courts would hold that the trustees' discretion in this case would be limited to amounts necessary to maintain decedent's widow according to her established standard of living and station in life. The cases have all been examined, but none of them involve language comparable to that used in paragraph "Tenth" of decedent's will. Of course, each case depends entirely on the language of the will being construed.

For instance, plaintiff cites Camden Safe Deposit and Trust Company v. Read, 124 N.J.Eq. 599, 4 A.2d 10 (1939), for the proposition that New Jersey law will invoke a test of the past standard of living of a beneficiary when dealing with the problem of corpus invasion. And so it will, provided the testamentary language, in light of surrounding facts and circumstances, justifies a reference to a past standard of living. In the Camden case, the testator in his will provided that if at any time it should become necessary, owing to bad health or accident to his son, the trustee was authorized to use so much of corpus as the trustee deemed necessary for the son's "medical care and comfort during said sickness and convalescence." The court construed this language to mean that the son should receive support from the trust corpus not only for medical care arising because of ill health, but also comfort during his sickness and convalescence. In determining what amount should be expended for such purposes, the court instructed the trustee to take into consideration the son's station in life and the increase or decrease of the severity of his ailment. This case is distinguishable from the case at bar, in that decedent's will does not refer to any specific need or situation that would require invasion of corpus.

The other cases cited by plaintiff involving invasion of corpus are likewise distinguishable. All of them deal with the extent of a trustee's power to invade corpus for stated purposes, such as the "support", "maintenance", "care", "comfort", or some other specific need of the beneficiary. In some instances invasion of corpus was permitted, in others not. Hudson Trust Company v. Grant, 114 N.J.Eq. 130, 168 A. 283 (1932); Hicks v. Jones, 138 N.J.Eq. 280, 47 A.2d 894 (1946); Renner v. Castellano, 21 N.J. Super. 331, 91 A.2d 176 (Ch.1952); Stetson v. Community Chest of Oranges & Maplewood et al., 24 N.J.Super. 243, 93 A.2d 796 (Ch.1952); Day v. Grossman, 44 N.J.Super. 28, 129 A.2d 577 (App.Div.1957). Additional cases cited by plaintiff merely enunciate the well known principle that a court of equity has supervisory jurisdiction over the management and preservation of trusts. Read v. Patterson, 44 N.J.Eq. 211, 14 A. 490 (1888); Vrooman v. Virgil, 81 N.J. Eq. 301, 88 A. 372 (1913); Hughes v. Federal Trust Co., 119 N.J.Eq. 502, 183 A. 299 (1936).

Plaintiff also urges, as relevant to the issue here, the case of Commercial National Bank of Kansas City v. United States, 265 F.Supp. 806 (D.Kansas 1966). The inter vivos trust in that case authorized invasion of corpus for

the benefit of the grantor's wife. Provision was made for distribution of principal, upon the wife's death, to charity. Deduction of the value of the charitable bequests from the gross estate was disallowed by the defendant. The additional tax resulting from this disallowance was paid and thereafter plaintiff sued for a refund. The court found that the trust instrument set forth an ascertainable standard in accordance with the rule laid down in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S. Ct. 291, 73 L.Ed. 647, and granted summary judgment for plaintiff.

Commercial National Bank is clearly distinguishable. The language used in the trust agreement in that case differs radically from the language of paragraph "Tenth" of decedent's will. In Commercial National Bank, specific authority was given to the trustee to invade corpus if at any time during the lifetime of grantor's wife some emergency or contingency should arise making such action necessary for her "comfort, welfare, contentment and happiness." The quoted phrase is repeated time after time in the trust agreement. The trustee was told it could take into consideration other income and cash resources available to the wife in determining the necessity or advisability of making such payments out of corpus for the purposes stated. And finally the trustee was directed to take into consideration the fact that the trust estate was created "for the purpose and with the intention of providing for the comfort, welfare, contentment and happiness of the * * * wife throughout her lifetime, and in order that she may continue to live in the manner in which she has been accustomed to live; * * *."

The court found that the power to invade corpus was limited to the wife's welfare, comfort, contentment and happiness, the same to be determined with relation to that standard of living to which she had been accustomed at the time of her husband's death. This criterion, imposed upon the exercise of the power to invade, was found to be determinable and capable of being expressed in money.

No case has been found that would limit a trustee's invasion of corpus to amounts necessary to maintain a beneficiary according to an established standard of living where the will contains no language indicating that such was the purpose of the trust. It is the absence of appropriate language in paragraph "Tenth" of decedent's will that causes the difficulty in this case. A standard based on whatever the trustees deemed "advisable" or "proper", restricted only by a consideration of the beneficiary's independent means, is not such a standard as would meet the test laid down in Merchants Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35. And see also Springfield Safe Deposit & Trust Co. v. Hassett, 43 F.Supp. 401 (D.Mass. 1942). The absolute and uncontrolled discretion vested in plaintiff by paragraph "Tenth" of decedent's will, is not a reliable limitation on the power to invade corpus where the language of the testamentary trust fails to state the purpose of such invasion beyond the mere direction to make such disbursements as may be deemed to be "advisable" or "proper".

For the reasons stated herein, the Court concludes that the will of Charles L. Tricker, deceased, does not set up an ascertainable standard governing the invasion of corpus. Under the circumstances, the claim for refund will be denied. However, it does appear that plaintiff has paid more than the tax assessed against the estate. Any such excess should be refunded.

This opinion shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Counsel for defendant, on notice to counsel for plaintiff, will please submit an appropriate order.