## FUNK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10216.

United States Court of Appeals
Third Circuit.

Argued Oct. 17, 1950.

Filed Nov. 16, 1950.

James S. Y. Ivins, Washington, D. C., for petitioner.

Melva M. Graney, Washington, D. C., for respondent.

Before BIGGS, Chief Judge and KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

The only substantial issue presented on this petition to review the decision of the Tax Court is whether there is taxable to the taxpayer under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Section 22(a),[1] the income of four trusts of which she was the sole trustee in the taxable years 1938 to 1941 here involved. The trusts were created by the taxpayer's husband.

The Tax Court, four judges dissenting, held that the income of the trusts, without regard to the distributions made by the taxpayer, is taxable to her. 14 T.C. 198.

The details of the creation of the trusts in controversy are set out in our prior decision in this matter, 3 Cir., 163 F.2d 796, as a result of which the cause was remanded to the Tax Court. In its decision now under review, the Tax Court has again set forth in detail its findings concerning the creation of the trusts. We shall not repeat them here. It is sufficient to state that under the terms of four trusts, which in this respect were identical, the taxpayer, as trustee, was given the authority " * * * in her discretion to pay all or a part of the net income annually to me (her husband, the settlor), or to herself, in accordance with our respective needs, of which she shall be the sole judge, and to accumulate and add to principal the balance of such income, if any. Any income so accumulated and added to principal by the Trustee shall become a part of the corpus of the trust and may not there-

after be distributed by the Trustee." Upon the death of the settlor-beneficiary, the corpus of each trust was to be distributed as he should appoint, but in default thereof, contingent beneficiaries were specified. The taxpayer and her husband were at all relevant times residents of New Jersey, where the trusts were created and administered.

The Commissioner, throughout this litigation, has contended that while the taxpayer was given control over the income of the trusts as trustee, nevertheless her control was "too little fettered to be regarded as less than absolute for tax purposes." Accordingly, he seeks to tax to her all of the income of the trusts, without regard to the manner of distribution, upon the example of Mallinckrodt v. Nunan, 8 Cir., 1945, 146 F.2d 1, certiorari denied, 324 U.S. 871, and Stix v. Commissioner, 2 Cir., 1945, 152 F.2d 562.

The Tax Court determined that the taxpayer had "absolute control over the trusts' income; that she made distributions entirely by the exercise of her own discretion; that she took whatever she wanted each year, and gave some of the rest to her husband in certain years; that what she distributed to him was determined solely by herself without any consideration of whether or not he had any need for the income; that the petitioner's (taxpayer's) husband had no need for any of the distributions which she made to him in 1939, 1940, and 1941; and that the sums which she did distribute to him were 'gifts' ".[2] It then

1. "§ 22. Gross income
  "(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * "

2. In its statement, "Findings of Fact", the Tax Court also determined that in mak-

ing distributions for the taxable years 1938 through 1941, the taxpayer, as trustee, did not make the respective distributions to herself and to her husband upon the basis of the needs of either one of them. It also found that the taxpayer's opinion was that neither she nor her husband had any need for any part of the income of the trusts in the taxable years because both had their own separate and independent income of substantial proportions. Finally, it found that taxpayer "took what money she wanted, if any, for her personal use, or to satisfy some desire to be extravagant, and gave her husband whatever was left, or whatever sum she wished to give him."

concluded that the evidence showed that the taxpayer, as trustee "followed to the letter the provisions in the trust instruments that she should distribute the trust income in her discretion, and that she should be the 'sole judge' of how she would distribute the income."

Thus, the Tax Court agreed with the Commissioner that the quoted clause in the trust instruments gave the taxpayer such unfettered command of the income therefrom as to bring her within the bounds of the Mallinckrodt and Stix cases. It held, too, after the manner of the Stix case, that the taxpayer had not shown what amount of the trusts' income she would have been compelled to pay to her husband, qua beneficiary, and hence, she had not proved what amount of the income was not within her absolute control.

It is our view that the Tax Court erred. But for the purpose of disposing of the instant petition of review we need not disagree on any principle of tax law. As the Tax Court recognized, the issue here turns on the provisions in the trust instruments relating to the power of the taxpayer-trustee over the income of the trusts. The Commissioner, likewise, rests upon the contention, that within the framework of the trusts, the income, for all practical purposes, was the taxpayer's own money.

The approach of the Commissioner to the problem presented is somewhat different from that of the Tax Court. He emphasizes the phrase "respective needs", and seeks to persuade that the word "needs", particularly coupled with the trustee's investiture as "sole judge" in respect thereto, is and was intended by the settlor to be, a nebulous standard not unlike that discussed in the Stix decision. Consequently, the Commissioner asserts that the trusts' income must be taxed to the taxpayer un-less she proved the amount which a court of equity would require her to pay to her husband-beneficiary.

The Tax Court, on the other hand, starts with the conclusion that there is no ambiguity in the trust instruments insofar as here pertinent and, whatever the motive of the settlor, the unambiguous and specific language controls.[3] Bunting v. Commissioner of Internal Revenue, 6 Cir., 1947, 164 F.2d 443, certiorari denied 333 U.S. 856, 68 S.Ct. 735, 92 L.Ed. 1136. The construction which the Tax Court put upon the language of the trusts here in issue is exemplified by its determination, to which we have alluded, that the taxpayer, as trustee, "followed to the letter the provisions * * * that she should distribute the trust income in her discretion, and that she should be the 'sole judge' of how she would distribute the income."

However, the tautological holding that the trustee's endowed authority was to distribute in her discretion and to be the sole judge of how she would distribute omits the critical, mandatory directions given by the settlor: First, the distribution, hence the exercise of discretion, must relate exclusively to the beneficiaries' respective needs, of which the trustee is the sole judge; and second, what is not needed must be accumulated and added to the principal, in which event the trustee is deprived of any authority to distribute.

Re-inserting, as we cannot avoid, these important commands in the trust indentures, we are impelled to the conclusion that the trustee was not clothed with either the power or right to enjoy the trust income at her option; that is, unless the word "needs" be construed in such fashion as to permit it, a point which we shall shortly reach. The authorization to the trustee to act as the "sole judge" did not

---

**3.** If the empowering clauses of the trusts are clear and unambiguous, it would follow that the evidence of the settlor's intent and of the trustee's conduct would not be admissible in New Jersey; Central Hanover B. & T. Co. v. Herbert, 1949, 1 N.J. 426, 429, 64 A.2d 75, 76: "The rule is that parol evidence is admissible to explain an ambiguity in a writing, or when the intent of the donor is not clear. But where the language employed has an ordinary meaning or where the meaning is plain and unambiguous on its face, there is no ground for the application of the above rule and parol or extrinsic evidence is inadmissible."

convey the trust income to her alone. To the contrary, only upon a determination of "needs", however that term may be defined, was she authorized to exercise her discretion in the matter of distributions. Patently, she would not be permitted to apply one definition of the word "needs" to her co-beneficiary and at the same time another more indulgent definition to herself, qua beneficiary. For it has been specifically held in New Jersey that a trustee-beneficiary cannot use his fiduciary capacity to prefer himself, and that where the trustee is a beneficiary his conduct will be scrutinized and weighed in the ultimate determination of the issue of the propriety of his exercise of discretion.[4] Nor does it follow, when the settlor lays down a standard, here "respective needs", that the designation of the trustee as "sole judge", or even the grant to him of "absolute discretion", obviates the necessity of exercising his judgment in a sound and honest manner, or relieves him of the duty to act in good faith and with a proper motive within the reasonable boundaries of such standard.[5] Thus, if the trustee here neglected or refused to make a sound determination of needs, or even honestly believed that there were no needs, and acted upon the extravagance of whim and caprice, made her own desires to predominate, and distributed any part of the trusts' income as a gift, then we should think such brazen abuse of her fiduciary obligations under the terms of the trusts here involved would be universally condemned. Restatement, Trusts, Section 187; 2 Scott on Trusts (1939) Section 187.

Since the single question in the case *sub judice* turns upon the provisions of the trust instruments, the trustee's actual conduct cannot be confused with her authorized powers. The Commissioner is not now asserting, nor did the Tax Court hold, that the trustee is taxable because she treated the trust income as her own regardless of her right to do so. The very minimum of difference between this and the Mallinckrodt, Stix and kindred cases, at once becomes apparent. In those two cases,[6] the taxpayers had for their own undesignated use the primary right to, and the command of, the income involved. There was no duty to relinquish except to provide for others what they might consider proper; hence, the determination that the taxpayers should have shown what they could be required to distribute. Here, the trustee had no *a fortiori* right to the income, nor did the absence of any "needs" on the part of either her co-beneficiary or herself confer such right upon her. What was not needed was directed by the settlor to be accumulated and added to principal, and the trustee's discretionary power to distribute conclusively terminated. She did not even have the authority to invade the principal in the event the income proved inadequate. On the basis of the decisions already cited, it seems, therefore, beyond dispute that if the taxpayer, as the Tax Court found, was of the opinion that neither she nor her husband had any needs, however she defined that term, yet made distributions to her husband and herself, she was patently acting outside the scope of the authority conferred upon her as trustee and in violation of the confidence reposed in her.[7]

4. Pearce v. Marcellus, E. & A. 1946, 137 N.J.Eq. 599, 45 A.2d 889; Turnure v. Turnure, E. & A. 1918, 89 N.J.Eq. 197, 104 A. 293, compare Reeve v. Beekman, 42 N.J.Eq. 613, 9 A. 27, affirmed E. & A. 1887, 44 N.J.Eq. 295.

5. Pearce v. Marcellus, supra, note 4; Conlin v. Murdock, 26 A.2d 522, 137 N.J. Eq. 12, 43 A.2d 218; Latorraca v. Latorraca, 132 N.J.Eq. 40, 47, 48, Ch.1945, affirmed E. & A. 1943, 133 N.J.Eq. 298, 31 A.2d 819; Commonwealth-Merchants Trust Co. v. Seglie, Ch.1940, 127 N.J.Eq.

160, 12 A.2d 153; Titsworth v. Titsworth, 107 N.J.Eq. 436, 152 A. 869; Turnure v. Turnure, supra, note 4; Coffin v. Watson, 78 N.J.Eq. 307, 79 A. 275 (Ch.1911). Compare, Sunderland v. Commissioner of Internal Revenue, 3 Cir., 1945, 151 F.2d 675.

6. Compare New Jersey Title & Guarantee Co. v. Dailey, Ch.1938, 123 N.J.Eq. 205, 196 A. 703.

7. See the discussion in Funk v. Commissioner, 1947, 163 F.2d 796, 802–803, our prior decision in this matter.

Further, we should point out, as we once did,[8] that the fact that the taxpayer's husband, as a beneficiary, might not be in a position to compel payments to himself is not determinative of his standing to compel the trustee to accumulate, or at least to prevent her arbitrary administration of the trusts, whether for her own advantage or not. In point of law, it is not alone for him to complain, for clearly the contingent beneficiaries have a position in any proceeding involving the discharge by the trustee of her fiduciary duties,[9] and so, too, successor or substituted trustees may maintain an action to redress a breach of trust particularly if it constitutes an appropriation of trust property.[10]

In view of the foregoing, it must be apparent that in the final analysis the primary source of difficulty in this case, as the Commissioner contends, concerns the meaning of the word "needs". The Commissioner says that the term means, and was intended by the settlor to mean, the equivalent of "desires", and that under the trust instruments the trustee was obliged only to distribute the income as she thought "fit" or "proper". The argument is based upon the determination that the taxpayer and her husband, qua beneficiaries, were in the taxable years independently wealthy and had no "needs" in the sense of necessities of life. The intention of the settlor, in addition, is culled by the Commissioner from an exchange of letters[11] between the settlor and his wife at the time of the creation of the trusts, as well as from the failure of the settlor to take any action to correct his wife if in fact she

were conducting herself as trustee contrary to his design and the declarations in the trusts.

The term "needs" is not, of course, one the content of which can be defined precisely. Nevertheless, we think it establishes a standard effectively distinguishing this case from, and taking it out of the rule of, the Mallinckrodt and Stix decisions. If, as the Tax Court observed, the trusts are unambiguous and specific, it can only be said of the term "needs" that it must be construed according to its ordinary meaning.[12] While obviously it must include the essentials of life,[13] it has been construed in New Jersey to mean that which is reasonably necessary to maintain a beneficiary's station in life.[14] It is not indicative of an unqualified gift, nor is it dependent upon the fancy of the administrator.[15] Thus, its use confined the trustee to limits objectively determinable, and any conduct on her part beyond those limits would be unreasonable and a breach of trust; certainly it did not countenance extravagance, whim, or caprice. And, as we have already noted, the absence of "needs", contrary to the situation of Mallinckrodt and Stix, did not result in the entitlement of the taxpayer to the trust income.

Assuming that the letters were admissible nothing in them demonstrates an intent on the part of the settlor, or even an understanding on the part of the trustee, to incorporate into the word "needs" something other than its common sense

8. 163 F.2d 796, 803.

9. 2 Scott on Trusts (1939) Sections 200, 214. See also Restatement, Trust, Sections 200, 214.

10. 2 Scott on Trusts (1939) Sections 200.-2, 223. See also Restatement, Trusts, Sections 200, 223.

11. In addition to being set out in the Tax Court's decision, 14 T.C. 198, the letters are quoted in our prior decision, 163 F. 2d 796, at pages 798–799.

12. See Central Hanover B. & T. Co. v. Herbert, 1949, 1 N.J. 426, 429, 64 A.2d 75.

13. See Conlin v. Murdock, supra, note 5.

14. See Corlies v. Allen, Ch.1882, 36 N.J. Eq. 100; Coffin v. Watson, supra, note 6. See also Helvering v. McCormack, 2nd Cir., 1943, 135 F.2d 294.

15. Reeve v. Beekman, supra, note 4. Latorraca v. Latorraca, supra, note 5.

content. Indeed, the settlor's letter suggests the correctness of the result we have reached. True, he emphasizes therein the independence of the trustee from control by himself or any other person.[16] But he refers to the trustee's "discretion", states that she is to act upon the circumstances which she finds to exist at the end of each year, and declares it his intention to put her in a position where she can exercise her own judgment as to how the circumstances should be met. Thus, the settlor has conveyed, as clearly as one might wish, his intent that the trustee should investigate and judge. His letter is inconsistent with any notion that she may act arbitrarily or capriciously. And the mandate of the trusts to accumulate, without right of re-entry by the trustee, lends weight to the conclusion that the settlor's state of mind did not encompass the thought that his wife should become the practical owner of the trusts' income. Similarly, her response to his letter emphasizes her independence of decision. It accepts the responsibility of administering the trusts and expressly acknowledges a duty with respect thereto. It is not a detailed attempt to state her understanding of her obligations, but it does not deny any of the terms of the trusts. If she has not acted since then within the scope of her fiduciary duties, it is not inferable from the mere failure of her husband to complain in the taxable years that she was therefore acting within the scope of those duties. We should not speculate upon the reasons for his failure to act, but, as we have pointed out, others may still do so.

We conclude, therefore, that the taxpayer was not endowed in the trust instruments with such unfettered command that the income therefrom became, for all intents and purposes, her own money. Accordingly, the decision of the Tax Court will be reversed.

16. Patently, the purpose of the settlor was to avoid finding himself within the doctrine of Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788,

and the Tax Court has determined him to have successfully achieved this aim: Wilfred J. Funk, decided February 7, 1944.