61 N.J. Super. 88 (1960)
160 A.2d 76
GRACE M. SIBSON, PLAINTIFF,
v.
THE FIRST NATIONAL BANK AND TRUST COMPANY OF PAULSBORO, TRUSTEE UNDER THE WILL OF WILLIAM A. SIBSON, DECEASED, WALTER W. SIBSON, AND HIS ISSUE NOT IN BEING, JOSEPHINE S. SCHIMPFT, AND HER ISSUE NOT IN BEING, KIRK SIBSON, KRAIL SIBSON AND JOAN ROOT, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 8, 1960.
*89 Mr. E. Milton Hannold (Messrs. Hannold & Hannold), for plaintiff.
Mr. Robert E. Gladden (Messrs. Ross and Gladden and William C. Flowers), for defendant trustee.
Mr. John P. Hauch, Jr. (Messrs. Archer, Greiner, Hunter & Read), for defendant remaindermen.
WICK, J.S.C.
The plaintiff has brought this action for the construction of a trust provision in the will of her deceased husband, William A. Sibson. The defendants are the trustee and remaindermen in being and not in being. The disputed provision reads as follows:
"FIFTH: In the event that my wife, Grace M. Sibson, survives me for thirty days, I give, devise and bequeath, absolutely and in fee, all of the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situate, whether real, personal or mixed, to the First National Bank and Trust Company of Paulsboro, in the County of Gloucester, New Jersey, a national banking corporation, its successors and assigns, hereinafter designated `Trustee', IN TRUST NEVERTHELESS, for the following uses and purposes:
(A) To pay in quarter-annual installments the net income arising from the said residuary estate, hereinafter designated `principal', to my said wife for as long as she shall live, such payments to *90 commence as soon after my decease as may be reasonably convenient for my Trustee, and further to pay to my said wife, freed and discharged from all trusts and uses, as much of the principal as my Trustee in its sole discretion shall determine necessary for her support, health and maintenance."
Following this it is provided that if there is anything left upon the wife's death it is to go to the testator's brother and sister or, if they do not survive the wife, to their issue.
Mr. and Mrs. Sibson were married in 1931. Mr. Sibson died on August 17, 1955. There were no children born of the marriage, nor did either of them have any children of their own. Mrs. Sibson has not remarried. She is now 66 years of age and states that her health is very good.
Mrs. Sibson pays for necessary items such as clothing, household expenses and food from her checking accounts. Taking the first nine months of 1959 as an example, Mrs. Sibson's check stubs for living expenses amounted to $2,654.70, and she said that covered everything. Her check stubs for the year 1958 added up to $3,182.42; for the year 1957 to $4,205.76, and for 1956 to $2,766.48.
Mrs. Sibson is paid social security benefits of $83.30 a month. She receives $100 a month from her husband's former employer, Socony Mobil, which is not taxable income. Her individual dividends, as reported for federal income tax purposes in 1958, were $1,242.60, and in 1957 were $1,174.95, and in 1956 were $906.75. Her income received from the trust, the corpus of which now amounts to about $115,000, was reported at $3,540.60 for 1958, $3,439.76 for 1957, $3,965.79 for 1956, and $3,553.74 for the first nine months of 1959.
Mrs. Sibson's personal federal income tax paid in 1958 was $584.30, when she probably had the benefit of one more exemption by reason of having passed the age of 65 than she previously had in 1957 when her income tax was $686.78 and in 1956 when her income tax was $694.26.
On the above basis, a fair statement of Mrs. Sibson's current annual income would appear to be as follows:

*91
Social security 83.30/month $999.60
Socony Mobil Plan $100/month 1,200.00
Trust estimated average 3,750.00
Dividends estimated average 1,200.00
 _________
 Total income before tax $7,149.60
Federal income tax approximately 600.00
 _________
 Income after taxes $6,549.60

Mrs. Sibson had no investments in her name when her husband died. Shortly before Mr. Sibson died he gave her $2,000. She collected $2,500 from a life insurance policy on her husband. She has received, over a period of three years following her husband's death, $21,600 from a group life insurance policy covering her husband. She succeeded to the outright ownership of the house in Woodbury, New Jersey, in which she and her husband lived as well as incidental items of personal property. Aside from the house and a life estate in a property in Canada, she now has stocks and bonds which, valued at cost, total $34,529.19, bank accounts totaling $4,000 and a car purchased for $2,750, not including trade-in.
The trustee has paid out of corpus $600 in 1956 for painting and repairs to the house in Woodbury, and $475 in 1958 for a new roof. Mrs. Sibson has recently made demand for further payments from corpus for her support, but the trustee has refused on the basis that with the income from the trust and her other income, she is adequately provided for. The question now before the court is whether it is proper for the trustee to take into account either her separate income or any of her income, separate or trust. The defendants remaindermen take the position that the word "necessary," as used in the provision noted above, refers to the possible inadequacy of other sources of income, and that the provision for use of principal is something of an insurance against need and that its use is restricted to emergency *92 situations. They assert that between the trust income and property passing outside of the will, there is ample provision for her support; that testator knew this, and that the provision for use of corpus is thus properly characterized as an expression of his anxiety that his wife might some day in the unforeseen, unpredictable future suffer severe financial reverses or ill health requiring much more substantial resources than would be available from her own funds and the trust income. The plaintiff, on the other hand, emphasizes the testator's liberality in regard to her, as indicated by the fact that the gift over is expressed "to pay and distribute the remaining principal, if any," (italics mine), and takes the position that corpus is the only source devoted to support, with the word "necessary" being merely a somewhat redundant reference to the fact that all of her normal living expenses are to be paid from corpus.
Admittedly, the use of the word "necessary," without any explanation of its meaning, is unfortunate and creates a substantial ambiguity as to the intention of the testator in regard to the provision under consideration. Resort, then, must be made to the other parts of the will. The fact that the testator contemplated the very real possibility that there might be no corpus left for the remaindermen, the gift over being qualified by the words "if any," and that there is no contrary expression in the will of a concern that something be left for the remaindermen, indicates that the primary object of his bounty in the use of the corpus was his wife. The intention manifested is that the use of the corpus is to be liberal and not just a stopgap against the vicissitudes of life.
Certainly the inclusion by the trustee of the wife's separate income as a factor in determining whether the use of corpus is necessary for her support is inconsistent with this intended liberal use of corpus. Her combined income, trust and separate, is approximately $6,560 per year, after taxes. Her average expenses for the past four years have been $3,300. Although it appears from the plaintiff's testimony that her *93 present expenses represent a thriftier manner of living than that to which she was accustomed while her husband was living; she buys less expensive clothes, she does less entertaining and traveling, she foregoes maintenance on the interior of the house; the annual income of $6,560 would be quite adequate, even in reference to her former standard of living, to maintain her and resort to corpus would only be necessary in the event of a catastrophe in her life. The testator did not want the use of corpus to be so limited and, therefore, the wife's separate income, at least, must not be considered by the trustee.
Even if I did not find within the use of the words "if any" an expression of liberality, I would be nevertheless compelled to come to the same conclusion that the separate income should not be considered. The will and the surrounding circumstances reveal no other indication as to whether the use of corpus was to be liberal, and I would thus need to refer to the rules of construction, one of which is, as expressed in Arenofsky v. Arenofsky, 29 N.J. Super. 209, 217 (App. Div. 1954), "a will for the widow's benefit should be construed liberally in her behalf." See also, 95 C.J.S. Wills § 617, p. 848.
This, of course, does not end the inquiry. It yet remains to be determined just how liberal the testator meant to be. Was it his intention that his wife be supported solely out of corpus or only insofar as the trust income was inadequate?
The plaintiff relies heavily upon the fact that there is no express reference in the will to the possible inadequacy of the trust income. As stated in her brief, "There are clearly two distinct gifts. First, a gift of the income from the trust, second, a gift of an amount to the surviving spouse for her `support, health, and maintenance.' There is no intention expressed by the testator that the latter gift should be dependent upon, or anyway related to the former, nor on the widow's personal funds. If the testator had intended such a relationship, he could easily have so provided in the will in question."
*94 The defendants remaindermen also allude to the fact that there is no express reference to the use or adequacy of the trust income. They say:
"The case of Hicks v. Jones, 138 N.J. Eq. 280 ([Ch.] 1946) is also cited by the plaintiff and is clearly distinguishable from the present case, since in that case the testator had expressly directed an invasion of principal where income of the trust itself was inadequate. Such could have been done by the testator here, but was not. This case therefore comes within the exception that where the trust instrument affirmatively shows that the beneficiary's other means are irrelevant, they do not have to be employed. The will provision that the case sub judice mentions nothing whatsoever about the possible inadequacy of income from the trust."
The provision in Hicks v. Jones, supra, was as follows:
"* * * I also give and bequeath unto my said wife the entire income from my estate and property from the day of my death so long as she, my said wife, shall survive, to be paid to her at different periods through each year as the same shall be available, and in case the income so directed to be paid her at any time shall be insufficient, in the opinion of my executors or trustees, to provide her with all the necessary comforts, conveniences and enjoyments of life, suited to one in her station, then, and in such case, I give unto her so much of the principal of my estate as in the opinion of said executors or trustees may be necessary for such purposes." (Italics mine.)
I do not feel that the absence of a phrase such as that italicized is of the significance that the parties give it. As I read the provision under consideration, the words "for her support, health and maintenance" refer to both the disposition of income and principal. From this standpoint, then, it appears that the word "necessary" and the use of corpus are related to the possible inadequacy of trust income.
Both plaintiff and defendants remaindermen cite various cases in developing their positions. It is notable that none of the cases cited by plaintiff arrive at or would support the construction proposed by her. Of the New Jersey cases cited by the defendants remaindermen there are two which reach the result asserted by them. They are Stetson v. Community *95 Chest of the Oranges and Maplewood, 24 N.J. Super. 243 (Ch. Div. 1952), and In re Willey's Estate, 139 N.J. Eq. 118 (Prerog. 1946). The language in the former is rather similar to that under consideration here. In that case the direction was as follows:
"* * * to pay or apply the net income and so much of the principal as may be proper to, or for the account of my sister, Genevieve B. Whittemore, during her life. My sister is not at all well, and I want all of the income and so much of the principal of my estate (and if necessary all of it) as may be proper to be applied to her maintenance, care and happiness, so that she may have every comfort possible. * * *"
In that case, however, there was a material factual difference from the one under consideration. The life tenant sister had an independent estate in the amount of $275,000. The income from this estate was $13,000 a year and, as noted by the court, "The record is barren of any proof that Mrs. Munn in her lifetime gave financial assistance to her sister during the period when her sister's income was insufficient to pay all her expenses." The natural inference would thus be that the testator sister, Mrs. Munn, intended that her sister use her own income, since this was the course of conduct followed during their lives. In our case Mrs. Sibson had no independent estate prior to her husband's death, and thus no comparable inference can be drawn, there being no previous course of conduct with respect to the use to be made by Mrs. Sibson of her independent estate.
The case of In re Willey's Estate, supra, in which the language is also similar to that under consideration, is of little help for the same reason. As stated by the court, "Mrs. Willey had a separate estate of around $90,000, or considerably larger than her husband's, and while they were both alive, they each paid one-half of the household expenses."
Judgment will be entered directing the trustee to make payments out of corpus to the extent that the trust income is inadequate to maintain Mrs. Sibson in a manner similar to that enjoyed by her while her husband was alive.