PEOPLES TRUST COMPANY OF BERGEN COUNTY, Trustee under the Will of Paul O'Brien, Deceased and Executor under the Will of Elsie Downer O'Brien, Deceased, Appellant,

v.

UNITED STATES of America.

No. 17399.

United States Court of Appeals Third Circuit.

Argued Feb. 18, 1969.

Decided June 27, 1969.

S. Victor DeLucia, Smith & Clayton, Rutherford, N. J., for appellant.

Frank X. Grossi, Jr., Dept. of Justice, Tax Division, Washington, D. C., for appellee (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), David M. Satz, Jr., U. S. Atty., Martin Tuman, Asst. U. S. Atty., of counsel.

Before VAN DUSEN, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

STAHL, Circuit Judge.

Peoples Trust Company of Bergen County, as executor under the Will of Elsie Downer O'Brien, initiated this refund suit to recover estate taxes paid to the United States. The sole issue presented is whether decedent's power to invade the principal of a trust, the decedent also being the income beneficiary, was a power of appointment limited by an ascertainable standard relating to the health, education, support or maintenance of decedent within the meaning of § 2041(b) (1) (A) of the Internal Revenue Code of 1954.[1]

In his will,[2] the relevant provisions of which are set out in the margin,[3] decedent's husband established a trust of the residue of his estate. The trustee was directed to pay the net income to the decedent as well as "such amounts out of the principal as my said wife from time to time may require; she to be the sole judge as to the amounts and frequency of such principal payments." During her life,[4] the decedent received the income from the trust but she neither requested nor received any portion of the principal.[5]

1. (b) Definitions. * * *
  (1) General power of appointment.— The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—
    (A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment. 26 U.S.C. § 2041(b) (1) (A).

2. The will was executed on January 27, 1943, and Paul O'Brien, decedent's husband, died on October 19, 1943. All of the operative facts having occurred subsequent to October 21, 1942, the provisions of § 2041 cited in note 1, *supra*, are applicable. *See* 26 U.S.C. § 2041(a) (2); 2 Mertens, Law of Federal Gift & Estate Taxation § 19.01, pp. 441–442 (1959).

3. Paragraph Seventh of Paul O'Brien's will provided, in pertinent part,
    Seventh: All the rest, residue and remainder of my estate * * * I give, devise and bequeath to the Rutherford Trust Company, * * * in trust, however, for the following uses and purposes:
    A. To invest and reinvest the same and to collect the income therefrom.

    B. To pay over all of the net income therefrom to my wife, Elsie D. O'Brien, for the term of her natural life, as she shall in her sole discretion direct.
    C. To pay to my wife, Elsie D. O'Brien, during her lifetime *such amounts out of the principal as my said wife from time to time may require; she to be the sole judge as to the amounts and frequency of such principal payments.*
    D. In the event that my said wife, Elsie D. O'Brien, shall become incapacitated in any way whatsoever, I direct my trustee to use all of the net income of my said trust estate and so much of the principal as it may deem necessary for her proper maintenance, comfort and support.
    E. Upon the death of my said wife, Elsie D. O'Brien, I direct my trustee to pay over to my children, Victor Duncan O'Brien, Paul D. O'Brien, and Avis Edna O'Brien, in equal shares, all that may remain of the principal of this trust, together with accumulations of income, if any, and accrued income, if any. (Emphasis added.) Appendix (App.) A–16–A–17.

4. Elsie Downer O'Brien died on February 18, 1963.

5. Stipulation, paragraph 2, App. A–21.
    This fact, of course, in no way affects the outcome of this tax appeal. As indi-

The estate tax return filed by Elsie O'Brien's executor reported the existence of the trust but did not include in the taxable estate the value of the principal. The Internal Revenue Service disputed the claimed exclusion and assessed estate taxes in the amount of $21,978.92 plus interest.[6] The assessment was paid by the appellant, the executor-bank, and following denial of its refund claim by the taxing authorities the bank brought this action in the district court.

The bank contended in the court below that decedent's power to consume the trust principal was limited by an ascertainable standard so that under § 2041 (b) (1) (A) the value of the principal was not includable in decedent's gross estate. On the basis of factual stipulations and briefs submitted by the parties the district court entered judgment for the United States[7] and the taxpayer has appealed.

■ We start with the proposition that while the taxability of the interest possessed by decedent is to be determined by federal law, we must look to the local law—here New Jersey's—to determine the legal rights and interests possessed by decedent under the trust: Morgan v. Commissioner, 309 U.S. 78, 80–81, 626, 60 S.Ct. 424, 84 L.Ed. 585 (1940); Miller

v. United States, 387 F.2d 866, 868 (3d Cir. 1968); Strite v. McGinnes, 330 F.2d 234, 238 (3d Cir.), cert. denied, 379 U.S. 836, 85 S.Ct. 69, 13 L.Ed.2d 43 (1964); Citizens First Nat'l Bank of Ridgewood v. United States, 288 F.Supp. 750, 753 (D. N.J.1968); 2 Mertens, Law of Federal Gift & Estate Taxation § 19.08, pp. 515–517 (1959).

■ Determining the nature of decedent's interest under New Jersey law requires us to construe the will of her husband, Paul O'Brien, and in so doing our function is "to ascertain and give effect to the 'probable intention of the testator,'" Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 564, 178 A.2d 185, 187 (1962), having in mind that when construing wills "the controlling consideration is the effect of the words as actually written * * *." In re Armour's Estate, 11 N.J. 257, 271, 94 A.2d 286, 292 (1953).

In ascertaining the meaning of Item C. of Paragraph Seventh of the will, appellant would have us focus on the words "may require" as providing the standard or measure of decedent's right to request and utilize principal. To read "she to be the sole judge as to the amounts and frequency of such principal payments" as supplying the stand-

---

cated in Strite v. McGinnes, 215 F.Supp. 513, 515–516 (E.D.Pa.1963), in an opinion by Judge Freedman, aff'd, 330 F.2d 234 (3d Cir.), cert. denied, 379 U.S. 836, 85 S.Ct. 69, 13 L.Ed.2d 43 (1964).

* * * [W]e deal here with the *power* to consume property, regardless whether the power was exercised or lay dormant. The grant of power in the will is the test of taxability, and the reality which governs is the language of the grant rather than the extent of its exercise. * * * (*See also* Fish v. United States, 291 F.Supp. 59, 61 (D.Or.1969).)

6. App. A–3.
The deficiency was assessed under § 2041(a) (2) of the Internal Revenue Code which provides that the gross estate shall include the value of all property with respect to which the decedent had at the time of his death a general power of appointment created after October 21, 1942.

7. App. A–10.
The court found that Elsie O'Brien's husband intended to give her "an unrestricted right to invade the principal of the trust. * * *" App. A–12. The court then concluded:

* * * * *

2. The decedent's direction that the trustee was to pay to the life-beneficiary such amounts of the principal "as my said wife from time to time may require; she to be the sole judge as to the amounts and frequency of such principal payments" created a *general power of appointment within the meaning of Section 2041* of the Internal Revenue Code of 1954.

3. The general power of appointment created by the decedent *was not limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent* within the meaning of Section 2041(b) (1) (A) of the Internal Revenue Code of 1954. (Emphasis added.) App. A–13.

ard governing decedent's right to consume principal would, according to the appellant, result in ignoring the words "such" and "require."

In the taxpayer's view, proper construction of Item C. indicates that decedent's right to consume was limited to such amounts out of principal as she may require. By reference to New Jersey law, appellant then argues that "require" means "needs" and that the power to consume is limited by a duty imposed under New Jersey case law to consume only such principal as is reasonably necessary for comfortable maintenance and support. In other words, while decedent was to be the sole judge of the amounts and frequency of payments from principal, her requests were limited by what she believed she required, in good faith, for reasonable necessities or maintenance. And appellant argues further that the decedent would have been accountable as a fiduciary to the remaindermen for any invasion of principal beyond her good faith needs.

■ For a number of reasons we are unable to accept the arguments which appellant advances. First, the New Jersey cases to which we have been referred do not, as appellant asserts, consistently construe "require" to mean needs, or necessities, or maintenance. In fact, in one of the early New Jersey cases we have found which deals with the question the court implicitly assumed that "require" meant "demand."

In Lippincott v. Stokes, 6 N.J.Eq. 122 (Ch.1847), the issue presented was whether certain securities belonged to the estate of one Hope Haines and were to be disposed of under her will or whether they belonged to a trust created by the decedent's mother. By her will the decedent's mother had created a trust of one-fourth of her personal property, with directions to pay the interest to Hope for her life and to pay her "so much of the principal as she shall, from time to time, by writing under her hand, attested by two credible witnesses, require of the said trustees. * * *" During her life Hope had acquired the principal of the trust from the trustees, and the issue presented was whether she had "required" payment of the principal in the manner prescribed in the will, that is, by her own attested writing. In finding that she had not met these testamentary commands, which if followed would have entitled her to the principal without meeting any other condition, the court impliedly assumed that "require" meant "demand."[8] *See also* Lippincott v. Ridgeway, 11 N.J.Eq. 526 (Ch.1858) (different issue but same will) ; cf. Corlies v. Allen, 36 N.J.Eq. 100 (Ch.1882) (payment of trust income "as she may need or require" held to limit the beneficiary's rights to income to so much as the trustees in good faith decide is necessary for her comfortable support, the court distinguishing the will under consideration in the *Lippincott* cases by stating "that there the word [require] was used in the sense of 'demand.'" 36 N.J.Eq. at 101.)

We have examined other New Jersey cases, particularly those upon which appellant relies,[9] and we do not find them

---

8. *Cf.* Strite v. McGinnes, *supra* note 5, where the district court said in discussing the terms of the will in that case: "The meaning of the word 'require' as the equivalent of 'demand' is not to be excluded." 215 F.Supp. at 516.

9. In the cases cited by appellant not only did the court look at the entire instrument to ascertain the intention of the maker, but the word require did not stand alone, as it does here. On the latter ground the cases are thus distinguishable. See, e. g., Coffin v. Watson, 78 N.J.Eq. 307, 79 A. 275 (Ch. 1911)

("to pay my wife, out of the income of my estate * * * such sums of money as she shall want or require for her comfortable support and maintenance * * *."); Cox v. Wills, 49 N.J.Eq. 573, 25 A. 938 (1892) (widow directed to distribute by will among testator's near relatives so much of testator's property "as she may not use for her comfortable maintenance"); Reeves v. Beekman, 42 N.J. Eq. 613, 9 A. 27 (Ch. 1887), aff'd, 44 N.J.Eq. 295, 18 A. 80 (N.J.Eq. 1888) (daughter to receive "the whole of the interest * * * and so much of the principal as she may need and her cir-

to support the conclusion that in every case "require" means "need." Rather "require" has been viewed in the context in which it was used and an effort made in each instance to interpret its meaning in light of the instrument as a whole.

Evidently pursuing that course, the district court, in reaching its conclusion, found that,

> The wife and life beneficiary was the object of the testator's bounty. All of his personal belongings were bequeathed to his wife; all of his real estate was devised to his wife; and the residue of the estate was put in trust for her benefit. * * * [10]

Such a finding with respect to the testator's intent suggests that the power conferred be given a broad construction: Sibson v. First Nat'l Bank and Trust Co., 61 N.J.Super. 88, 160 A.2d 76, modified, 64 N.J.Super. 225, 165 A.2d 800 (1960).[11]

Appellant objects to the foregoing finding of fact by the district court, contending that the record contains no evidence of the value of the probate estate of Paul O'Brien to support or rebut the court's finding.[12] A lower court's findings of fact are not to be disturbed on appeal unless clearly erroneous. We are satisfied that on this point the district court did not err. A reading of decedent's husband's will amply supports this finding. With the exception of his medical books and equipment, the testator gave his wife all of his personal property, all of the real estate which he might own at his death, all of the income from the trust created from his residuary estate, plus the power to invade trust principal. In addition, it is not without significance that in providing for the disposition of trust principal to his children upon his wife's death, Paul O'Brien directed the payment of "all that may remain of the principal of this trust * *." The use of these words suggests that the testator envisaged the possibility that his wife might utilize some or all of the principal of the trust, New Jersey Title Guar. & Trust Co. v. Dailey, 123 N.J.Eq. 205, 196 A. 703 (Ch.1938), and is further support for the proposition that the wife's power to consume was not a nar-

---

cumstances may require, from time to time * * *"); Corlies v. Allen, 36 N.J.Eq. 100 (Ch. 1882) (trustees directed to pay interest to testator's daughter "as she may need or require.")

10. App. A–12.
In Strite v. McGinnes, 330 F.2d 234, 239 (3d Cir.), cert. denied, 379 U.S. 836, 85 S.Ct. 69, 13 L.Ed.2d 43 (1964), we agreed with the determination of the district court that,
    * * * We find decisive indication that the paramount objects of the testatrix's bounty were her surviving sisters or sister [the decedent whose estate tax was in issue] * * *.
        * * * * *
    * * * The will emphatically reveals that the sisters are intended to be the main objects of testatrix's bounty * * *. 215 F.Supp. at 517.

As we have said many times, "each will is unique and * * * the intention of the testator must be found within the four corners of the instrument." Miller v. United States, 387 F.2d 866, 868 (3d Cir. 1968); see also Hoffman v. McGinnes, 277 F.2d 598, 604 (3d Cir. 1960). It is the function of the district court to ascertain that intention in the first instance.

11. See also Citizens First Nat'l Bank v. United States, 288 F.Supp. 750, 753 (D. N.J.1968), a charitable deduction tax case, in which Chief Judge Augelli stated that,
    [I]t is a rule of construction in New Jersey that provisions in a will for the benefit of a widow should be construed liberally in her behalf * * *.

12. Appellee's answer to this contention is well taken, as set forth in its brief, p. 10, n. 5:
    The taxpayer disputes this finding on the ground that the record offers no indication of the values of the testator's real estate and personal belongings, which the decedent received in full and which the taxpayer claims were small in amount compared to the residuary estate (Br. 6–7). Taxpayer's argument proves too much. Even if most of the testator's assets were poured into the trust, the decedent was incontestably entitled to the life estate in the trust and she enjoyed the power to invade corpus at least to the extent of her "needs."

row one within the limits of the statutory ascertainable exception.

█ Moreover, even were we to accept appellant's argument that decedent's utilization of principal was limited because she was accountable as a fiduciary to the remaindermen for any invasion not made in good faith, the statutory standard would still not be met for, as Judge McLaughlin said in Strite v. McGinnes, *supra,* in response to a similar argument,

\* \* \* [I]t is a fair construction of this section that the measure of control over the property by virtue of the grant of power is the determinant of the taxability of property subject to the power. See Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L. Ed. 585 \* \* \*.

\* \* \* \* \* \*

\* \* \* The search of § 2041 is the breadth of power given a decedent. When that is determined, the tax consequence follows. *Good faith exercise of a power is not determinative of its breadth.* (Emphasis added.) 330 F. 2d at 238, 240.[13]

█ In light of the language chosen by the testator, Paul O'Brien, and his clear purpose and decision to provide amply for his wife, we find that the decedent's power to consume corpus was not limited by an ascertainable standard relating to decedent's health, education, support or maintenance. And even if some limits were thought to be imposed

by the "may require" standard, it seems fairly clear that the power possessed by the decedent would permit consumption of principal for her general benefit and so exclude the power from the § 2041(b) (1) (A) exception: Miller v. United States, *supra;* Strite v. McGinnes, *supra;* Internal Revenue Service Regulations, 26 C.F.R. § 20.2041–1(c) (2).

Appellant relies on two earlier decisions of this court, preceding Strite v. McGinnes, which dealt with the problems of the marital deduction and the taxability of the income from a trust, respectively. Commissioner v. Ellis, 252 F.2d 109 (3d Cir. 1958); Funk v. Commissioner, 185 F.2d 127 (3d Cir. 1950). Neither of these cases is controlling here.

█ In *Ellis,* a case arising in Pennsylvania, the taxpayer had the power under her husband's will to invade the corpus of a trust he had established for her if she should "require \* \* \* she, and she alone, shall be the judge of how much shall be required \* \* \*" The court held the trust ineligible for the marital deduction on the ground that the widow's power to invade the corpus of the trust was not completely unfettered.

*Ellis* is to be distinguished because,

(1) it related to the marital deduction rather than the § 2041 issue we have here;[14]

---

13. The applicable language in the will in *Strite* was as follows:

It is my desire that my sisters enjoy the benefit of my property to as full an extent as they may require. If, therefore, in the sole judgment of the trustees hereinafter named, it is at any time necessary or advisable in order to provide for the reasonable needs and proper expenses or the benefit or comfort of my sisters or the survivor of them, I authorize, empower, and direct them to sell any or all of the said residue of my property as they may think proper and pay over to my sisters, or to my surviving sister, the proceeds or any part thereof as if it were income. 330 F.2d at 235 n. 1.

14. Cases under the marital deduction section of the Internal Revenue Code are

not necessarily binding in the interpretation of § 2041: Strite v. McGinnes, *supra* note 5 (*but see* Security-Peoples Trust Co. v. United States, 238 F.Supp. 40 (W.D.Pa.1965).) In *Strite,* the district court said:

\* \* \* Cases under § 2056 [the marital deduction provision] have only limited relevance since the question which arises is not whether an ascertainable standard exists but whether *any* standard exists. In order to qualify for the marital deduction, the surviving spouse must have an *unqualified* power to appoint the principal to herself during her lifetime. The power must be one that may be exercised "in all events." 215 F.Supp. at 514 n. 2.

(2) it was decided under the law of Pennsylvania which may not necessarily be exactly the same as that of New Jersey on the construction of the language in the will;

(3) insofar as *Ellis* relied on the "good faith" duty imposed upon the life tenant, it is not in accord with *Strite* which applied the "measure of control" test; and

(4) the interpretation of the critical language in *Ellis* and in our case must, of course, be made in the context of the particular wills in which the words appeared. (*See* Security-Peoples Trust Co. v. United States, 238 F.Supp. 40, 51 (W.D.Pa.1965), for a thorough analysis of the will in *Ellis*.)

*Funk,* a case arising in New Jersey, did not involve the ascertainable standard problem under § 2041, but rather the taxability of certain income under a trust which gave the wife-beneficiary power to distribute income to herself and her husband "in accordance with our respective needs, of which she shall be the sole judge." The court held the wife's power not to be completely unfettered and, therefore, the income not taxable.

We do not believe *Funk* to be significant because there the trust instrument actually used the term "needs." Here, Paul OBrien's will used the word "require" which, as we have shown above, does not conclusively and uniformly mean "needs" under the New Jersey case law. Also, the fact that a decedent's power of appointment may not be completely unlimited, as in *Funk,* does not mean that it comes within the strict elements of the ascertainable

standard test under § 2041. Finally, as in *Ellis,* the court's reliance in *Funk* on the "good faith" test is not wholly consistent with the subsequent Strite v. McGinnes decision.

Appellant also asks that we follow the rationale of Pittsfield National Bank v. United States, 181 F.Supp. 851 (D.Mass. 1960), a § 2041 ascertainable standard case arising under Massachusetts law. The relevant language in the trust in that case gave to the decedent the income during his life "together with all or such part of the principal of same as he may from time to time request, he to be the sole judge of his needs." The district court concluded that the limitation came within the ascertainable standard test under § 2041.

*Pittsfield* is not directly in point here because it involves the law of another jurisdiction and because, as in *Funk,* the trust language actually referred to "needs" whereas the trust in the instant case, of course, uses the term "require." Furthermore, the Massachusetts district court in analyzing the testator's intent from the "four corners" of the instrument said, in a portion of its opinion quoted in appellant's brief (pp. 34, 35):

\* \* \* The grant of the power must be read in its entirety, and so read I rule that it was a grant of a power to invade corpus only in the event the donee was in financial or physical need. This conclusion becomes even more compelling upon an examination of the circumstances surrounding the creation of the trust and the provisions concerning the disposition of the remainder.

\* \* \* It is quite apparent that Mrs. Colt intended principally to provide for the remaindermen and to give her husband a power of invasion only in

---

In 2 Mertens, *supra* note 2 at § 19.13, p. 547 n. 3, it is stated:

A comparable problem is present under the marital deduction provision as to whether the right to invade is such as to constitute a power to appoint.

\* \* \* The two statutory sections are not comparable, however, and particular weight must be given to the fact that the surviving spouse has an interest which is "terminable."

the unlikely event that he should need any part of the principal without subjecting the property again to taxation. 181 F.Supp. at 854.

As previously indicated, Judge Wortendyke, in the court below, found the intent in the trust created by Paul O'Brien's will to be to the contrary, a finding we consider to be fully supportable.

In summary, appellant's two main arguments in support of its position are:

(1) that "require" means "needs" and, therefore, comes within the ascertainable standard test of § 2041; and

(2) that, in any event, the good faith fiduciary duty imposed by New Jersey law upon the decedent as life tenant is sufficient to restrict her power within the ascertainable standard formula.

The first argument, as we have shown, founders on the uncertainty of New Jersey case law; the second is in direct conflict with our prior holding in Strite v. McGinnes.[15]

The judgment entered by the district court will be affirmed.[16]

---

15. If appellant were correct in its "good faith" argument, there would appear to be little need for the § 2041 exclusion of powers of appointment limited by an ascertainable standard as undoubtedly most states impose a similar duty of good faith on the life tenant in favor of the remaindermen.

It is interesting to note that in the district court opinion in Strite v. McGinnes, *supra* note 5, Judge Freedman considered it possible for a power of appointment to be subject to good faith requirements and still be outside the restrictions of the ascertainable standard test:

* * * There is present here a power to consume which extends beyond the statutory exception of an ascertainable power for health, education, support or maintenance, even though it is confined within the outer reaches of the judicial limitation of good faith. * * * There are areas of expenditure beyond support and maintenance which do not cross the line of good faith. * * * 215 F.Supp. at 518.

16. In its brief appellant asked that we direct the court below "to enter judgment that the fees to be paid to the attorneys for the Taxpayer for conducting this litigation be allowed by the Internal Revenue Service as a deduction in the calculation of the taxable estate and that a refund, with interest as aforesaid, be paid to the Taxpayer upon submission of Internal Revenue Service Form 843 (Claim for Refund)." (See also paragraph 8 of Complaint, App. A–4.)

We believe that the matter of deduction of attorney's fees should be determined by the district court, Phinney v. Kay, 275 F.2d 776, 781 (5th Cir. 1960), or, as suggested by government counsel at oral argument, by the Internal Revenue Service. Our affirmance of the decision below is, therefore, without prejudice to appellant to seek additional relief with respect to the deduction of attorney's fees in the appropriate forum.