**Marien E. DURST and G. Chester Durst, Executors of the Estate of John E. Dieteman, Deceased**

v.

**UNITED STATES of America.**

**Civ. A. No. 75–67 Erie.**

United States District Court, W. D. Pennsylvania.

March 18, 1976.

William F. Illig, Erie, Pa., for plaintiffs.

Blair Griffith, U. S. Atty., Pittsburgh, Pa., Archie Parnell, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEBER, District Judge.

This is a suit for refund of estate taxes erroneously assessed and paid brought in this court under 28 U.S.C. § 1346(a)(1). Plaintiffs are the executors of the estate of decedent who died in 1971. It is the government's inclusion of the assets of an *inter vivos* irrevocable trust in the decedent's taxable estate that gives rise to the present claim.

Decedent, hereinafter called Settlor, created an irrevocable trust in 1951 for the benefit of his daughter and her descendants and their spouses. The trust agreement is an elaborate document of 21 pages, executed between Settlor and the Corporate Trustee, a national bank located in Ohio. The instrument provides that it shall be construed in accordance with the law of Ohio.

The instrument makes detailed provisions for the accumulation of income and the apportionment and distribution of income and principal and grants wide discretion to the Trustees with regard to these matters.

ARTICLE SIXTH. *Additional and successor trustees,* (A) of the trust instrument reads as follows:

"The Settlor reserves the right at any time during his life to appoint one or more Individual Trustees to act with the Corporate Trustee by giving a written notice of such appointment, signed by the Settlor, to the Corporate Trustee. After the death of the Settlor the Individual Trustee may appoint a successor Individual Trustee by giving written notice thereof to the Corporate Trustee, or by Will."

The United States claims that the value of the trust is properly includible in the decedent's gross estate in accordance with Sections 2036 and/or 2038 of the Internal Revenue Code of 1954. These sections of the Internal Revenue Code generally require the inclusion in the decedent's gross estate of the value of any property which the decedent has transferred where the decedent retains the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. They likewise make taxable in the decedent's estate of any property transferred by trust, or otherwise, where the enjoyment thereof was subject at the date of decedent's death to any change through the exercise of a power, in any capacity, by the decedent alone or by the decedent in conjunction with any other person.

The question at issue, therefore, is whether under this instrument the decedent could have appointed himself as an Individual Trustee of the trust and thereby make the assets taxable as part of his own estate by reason of the powers granted to the Trustees of this trust over the distribution of income and principal.

As in *Mathey v. United States,* 491 F.2d 481, 485 [3rd Cir. 1974], the task of this court is to ascertain whether the trust agreements reposed the power in the settlor to name himself Individual Trustee.

The interpretation of the trust instrument is governed by the law of Ohio.

"[W]hile the taxability of the interest possessed by the decedent is to be determined by federal law, we must look to the local law . . . to determine the legal rights and interests

possessed by decedent under the trust (citations omitted)." *Peoples Trust Co. v. United States*, 412 F.2d 1156, 1159 [3rd Cir. 1969].

Ohio law, both by judicial decision, *Jones v. Luplow*, 13 Ohio App. 428, and by statute, permits a settlor to appoint himself trustee of a trust which he has created. The revised code of Ohio § 1335.01 provides:

"The creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend, or revoke such trust . . . ."

The plaintiffs argue that since the power to "alter, amend, or revoke" is included among the powers in the foregoing statute, which the creator of a trust may reserve to himself, such a reservation in a written trust instrument must be express. In *Central Trust Co. v. McCarthy*, 73 Ohio App. 431, 57 N.E.2d 126 [1943], the court, in construing this statute, said:

"There is not in the instrument here under consideration any reservation of the right or power to any individual acting separately to revoke. . . . Lucy A. Smith could not revoke as to her individual interests because she had not reserved such power . . . ".

We conclude, therefore, that an Ohio court construing this instrument would hold that the failure to preserve expressly to himself the power to appoint himself a trustee with the full range of discretionary powers over principal and income given to trustees in this instrument indicates that it was not the intention of the Settlor to allow himself to be appointed.

Neither counsel nor the court have been able to find any Ohio authority on the specific point at issue here. While federal law requires us to construe such instrument in accordance with the construction given by state law, it is not often that such situations arise in the state courts. The beneficiaries of an *inter vivos* trust are not apt to bite the hand that feeds them, particularly where, unlike King Lear, the settlor has not disposed of his entire estate through the *inter vivos* trust. It is only in situations where a third-party, such as a creditor of the settlor, seeks to reach the assets that such a case might arise.

Ohio law follows the general rule of construction of trust and testamentary interests, that the intention of the testator or the settlor governs the interpretation of the instrument. "It is axiomatic, in matters such as we have under consideration, that the intention of the settlor shall be determined by the language employed in the trust instrument." *National City Bank v. Benjamin Rose Institute*, Ohio App., 113 N.E.2d 658 (see also *Central Trust Company v. Bovey*, 25 Ohio St.2d 187, 267 N.E.2d 427). The general rule is more specifically set forth in Restatement of the Law, Trusts 2d, § 4. Terms of the Trust:

"The phrase 'terms of the trust' means the manifestation of intention of the settlor with respect to the trust expressed in a manner which admits of its proof in judicial proceedings."

The Comments to the above section amplify this rule:

"Comment:

*a. What is included in 'terms of the trust.'* The phrase 'terms of the trust' is used in the Restatement of this Subject in a broad sense, and includes the manifestation of intention of the settlor at the time of the creation of the trust, whether expressed by written or spoken words or by conduct, to the extent that it is expressed in a manner which admits of its proof in judicial proceedings. The terms of the trust may clearly appear from written or spoken words or may be determined by interpretation of the words or conduct of the settlor in the light of all the circumstances. The manifestation of intention of the settlor is the external expression of his intention as distinguished from his undisclosed intention.

\* \* \* \* \* \*

*d. Trust created inter vivos by written instrument.* If a trust is created by a transaction inter vivos and is evidenced by a written instrument, the terms of the trust are determined by the provisions of the instrument as interpreted in the light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible because of the Statute of Frauds, the parol evidence rule, or some other rule of law."

It appears that the courts of Ohio follow the rule set forth in Section 4, Restatement of the Law, Trusts, 2nd. *Provident Savings Bank & Trust Co. v. Pettengill*, Ohio Cm.Pl., 143 N.E.2d 884, 887.

Examining the trust instrument itself to find the intent of the Settlor reveals that its language does not expressly give the Settlor the power to appoint himself as co-trustee, nor does it expressly deny him that right. The language of the Ohio statute, cit. supra, provides that the creator of a trust may reserve to himself any power but this language appears to call for an express reservation. No case has been cited where such a reservation has been implied. Any inference that such a reservation may be implied is rebutted by multiple instances within the body of the instrument itself leading to a contrary conclusion as noted hereinafter. We cannot draw any inference from the evident expertise of the draftsman as demonstrated in other parts of the instrument. They could have settled the issue by expressly granting or excluding the power. We cannot accept plaintiffs' argument that it was unnecessary to exclude the power expressly because the remainder of the instrument clearly dictates its exclusion. The very fact that judicial construction must be resorted to rebuts that argument. The draftsman could easily have added the few words of exclusion to eliminate that prospect without doing violence to the remainder of the instrument. On the other hand, to have expressly included the power of Settlor to appoint himself as Individual Trustee in the instrument would have created a series of internal inconsistencies. Our examination of the entire instrument reveals no other provision which gives rise to an inference that the Settlor intended to reserve the power to appoint himself as Individual Trustee. On the other hand we find a series of provisions, no single one of which is sufficient to imply the exclusion of this power, but which taken together leads to the conclusion that the instrument must be construed to prohibit the appointment of Settlor as an Individual Trustee. We note the more significant provisions of the instrument which point to this conclusion.

In the preliminary paragraph the Settlor assigned and transferred to the Trustees all the assets of the trust in question. This is an irrevocable assignment.

Article First, Subsection B, makes the Trustee's discretionary powers free from interference, demand or control by any other person.

Article Second, Subsection D, Insurance, gives the Trustees the power of an absolute owner of the insurance and the exercise of these powers shall not be subject to review by any court.

Article Fifth, Subsection F. The only power which the Settlor expressly reserved to himself was the power to approve changes in the investments of the trust during his lifetime and while he was competent to do so.

Article Fifth, Subsection E, contemplates two separate individuals as Settlor and Individual Trustee; it gives the power to the Corporate Trustee and the Individual Trustee to pass upon the Settlor's incompetency; it provides for the payment of a commission to the Individual Trustee; it provides for the consent of Settlor to sales of stock during his lifetime or competency, but if he were incompetent the Individual Trustee could act.

Article Fifth, Subsection F(a), makes the powers of the Trustees (including the Individual Trustee) over sale of the as-

sets subject to the consent of the Settlor during his lifetime and competency.

Article Fifth, Subsection F(b) speaks of the powers of the Trustees after the death of Settlor, without designating them as "surviving trustees".

Article Sixth, Subsection A, speaks of the power of the Individual Trustee to appoint a successor Individual Trustee after the death of Settlor. This description of the Individual Trustee is not limited by the language "if there shall be one" as set forth in Article Fifth, Subsection E.

Article Sixth, Subsection B, provides for notice of an intention to resign to be given by the Individual Trustee to the Settlor.

Article Seventh provides that the Settlor, with the consent of the Trustees, may increase the principal.

Article Fifth, Subsection C, imposes limitation on the powers of certain persons who might become Trustees, including any descendant of Settlor, or spouse, with respect to application or allocation of principal or income. The obvious purposes is the avoidance of adverse tax consequences. It may be inferred that Settlor would have included himself as a Trustee with limited powers for the same purpose if there were any intention that he could so appoint himself.

Plaintiffs have argued other matters in the instrument from which similar inferences might be drawn, which we do not find sufficiently significant to note individually. Defendant classifies these as a "minor surplus of language". This appellation might apply to individual instances, but their repeated pattern throughout the trust indenture gives support to plaintiffs' argument on the intent of the Settlor.

The *gestalt* which we derive from a consideration of the instrument as a whole is that the Settlor intended to exclude himself from appointment as Individual Trustee.

Extrinsic evidence which we deem admissible on the question of Settlor's intent comes in the form of a series of documents contemporaneous with the preparation and execution of the trust instrument. The correspondence between Settlor, the corporate trustee, the estate planning consultants whom he employed, and the Internal Revenue Service show that the Settlor was an extremely astute individual with considerable knowledge of the operation of the Internal Revenue laws. He was concerned with the taxable effects of what was being done. Although a resident of Pennsylvania, he chose an Ohio corporate trustee to provide for the accumulation of income which would not have been possible under the law of Pennsylvania, his domicile. He was concerned with the tax effects of the location of the trust res in Ohio.

Of considerable importance in determining Settlor's intent here are the gift tax returns filed by Settlor and his wife for the year in which this trust was created. The extraneous evidence shows that Settlor was well aware of the tax consequences of the gift and the consequences of having his spouse join in the gift to receive the benefit of the marital deduction. It appears that the Settlor prepared these returns himself as the duplicate copies of the typewritten returns show no indication that someone else prepared the returns for him. He engaged in correspondence with the Internal Revenue Service over matters arising from this return. From this we draw the inference that the Settlor intended the gift to be complete by reason of the fact that he retained no right to alter the interest of beneficiaries which would not be true if he intended to reserve the power to appoint himself as Individual Trustee. Reg. 25.2511–2(c) provides that a gift is incomplete if a reserved power gives the donor the power to name new beneficiaries or to change the interest of the beneficiary as between themselves. We know from the Settlor's correspondence that he desired to establish an irrevocable trust and to pay the gift tax chargeable thereon, both of which are inconsistent with any intent to reserve powers to himself to change the interest of the beneficiaries.

Because there is nothing within the body of the instrument itself, or in the extrinsic evidence from which an inference may be drawn that Settlor intended to retain a power of control over the distribution of income or principal we believe that due regard should be given to the evident estate planning activities of the Settlor designed for the purpose of reducing the taxes upon his estate. His creation of an irrevocable trust and the payment of the gift tax thereon, his employment of the marital deduction formula in the gift tax return, and his contemporaneous correspondence with his estate planning consultants, all evidence an intent to reduce estate taxes. The estate plan revealed in the trust instrument itself shows a regard for tax consequences, his postponement of the vesting of the principal for a generation, and his provision for limiting the powers of trustees who might be beneficiaries under the trust, all evidence a plan to reduce taxes. In *Dodd v. United States,* 345 F.2d 715 [3rd Cir.1965], the court recognized a presumption that a testator intended his estate to have the full benefit of the marital deduction despite the fact that his intention was not clear from the instrument involved. Similarly the tax court, construing a will as a whole, found that since the purpose of the trust was to qualify for the marital deduction an ambiguous description of the powers of the trustees would not authorize the withholding of any income from the wife which would result in a loss of the marital deduction. *Estate of James S. Todd, Jr.,* 57 T.C. 288 [1971].

In all the years in which Sections 2036 and 2038 of the 1954 Code, and their predecessor statutes have been in effect there have been few cases in which a close parallel situation has been revealed. Both parties point to *Mathey v. United States,* cit. supra, as the controlling case. There the court held the trust assets taxable in decedent's estate because Mrs. Mathey retained the power to change the trustee and it was, therefore, held that under this clause she had the power to appoint herself. The only contrary indication contained in the trust instrument itself which was argued as evidence of intent was the use of the word "it" to describe a successor trustee from which it was argued that donor intended only a corporate trustee. The district court found that the use of the neuter pronoun did not signify an intent on Mrs. Mathey's part to allow a corporation only to be named as successor trustee and that, therefore, an individual could be substituted for the original trustee.

This was a finding of fact by the trial court relevant to a determination of grantor's intent, and under Fed.R.Civ.P. 52(a) could not be set aside unless clearly erroneous. The Court of Appeals could not hold this finding to be clearly erroneous.

In *Mathey* the court considered testimony extraneous to the document in question to determine intent. However, this testimony in large part concerned only the likelihood of Mrs. Mathey exercising the power. The Court of Appeals held such testimony largely irrelevant on the question of the existence of the power. Similarly, whether a New York court would find the grantor suitable to serve as trustee would be a question of fact in a purely hypothetical case, unrelated to the question of her power to make such appointment.

We find the present case to be distinguished from *Mathey,* by both the intrinsic and extrinsic evidence of intent of the Settlor. We find that Settlor's intent was to exclude the Settlor from appointment as an Individual Trustee under the trust in this case. Therefore, Settlor retained no right or power to designate persons who should possess or enjoy the property or the income therefrom.

ORDER

AND NOW, this 18th day of March, 1976, the court finds for the Plaintiff on the question of liability in the within action, based on the foregoing Opinion which shall constitute the Court's findings of fact and conclusions of law.

IT IS ORDERED that the parties shall submit a computation of the liquidated damages, including interest, to be awarded sufficient for the entry of final judgment. If the parties agree this should be in the form of a stipulation, otherwise each party shall submit its suggested computation. Said matters shall be submitted on or before April 14, 1976.

ORDERED filed.